IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ART+COM Innovationpool GmbH., | ) |
| | ) |
| Plaintiff, | ) C.A. No. _____ |
| | ) |
| v. | ) |
| | ) DEMAND FOR JURY TRIAL |
| GOOGLE INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff ART+COM Innovationpool, GmbH. alleges in this Complaint against Defendant Google Inc. as follows:

## THE PARTIES

1. Plaintiff ART+COM Innovationpool GmbH. ("ACI") is a limited liability company organized and existing under the laws of the Federal Republic of Germany, having a principal place of business at Kleiststrasse 23-26, 10787 Berlin, Germany. ACI is a spin-off of ART+COM AG ("ART+COM"), which is an interdisciplinary group of designers founded to explore new mediums in the fields of art, design, science and technology. Ranging from artistic installations and design-focused projects to technological innovations and inventions, ART+COM's work includes different kinds of formats: autoactive, reactive and interactive objects and installations, media-based environments and architectures.

2. On information and belief, Defendant Google Inc. ("Google") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043.

## JURISDICTION AND VENUE

3. This civil action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Google at least because Google is a corporation organized and existing under the laws of the State of Delaware.  Personal jurisdiction (1) exists generally over Google because Google (directly and/or through its subsidiaries, divisions, groups, or distributors) has sufficient minimum contacts with the District of Delaware as a result of business conducted within the State of Delaware; and/or (2) exists specifically over Google because, on information and belief, Google has committed acts of infringement in the District of Delaware, including at least because Google (directly and/or through its subsidiaries, divisions, groups, or distributors) advertises, markets, offers for sale, or sells the infringing products at issue in this case in the District of Delaware.

5. Venue in the District of Delaware is proper under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) at least because Google is a Delaware corporation that is subject to personal jurisdiction in this district and has committed acts of infringement in this district.

## CLAIM FOR PATENT INFRINGEMENT

6. ACI re-alleges and incorporates paragraphs 1-5 as if fully set forth herein.

7. U.S. Patent No. RE44,550, entitled "Method and Device for Pictorial Representation of Space-Related Data" (hereinafter, the "'550 patent"), duly and legally issued on October 22, 2013.  A true and correct copy of the '550 patent is attached hereto as Exhibit A. The '550 patent is a reissue of U.S. Patent No. RE41,428 ('428 patent) which is a reissue of United States Patent No. 6,100,897 ('897 patent).

8. ACI is the assignee of all rights, title, and interest in the '550 patent, including the right to sue and recover for all past infringement.

9. Entitled "Method and Device for Pictorial Representation of Space-Related Data," the '550 patent describes and claims an invention conceived by the inventors and reduced to practice in a medium called "Terravision."

10. Terravision is a networked virtual representation of the earth based on satellite images, aerial shots, and altitude and architectural data. It provides an environment to organize and access information spatially. Users of Terravision can navigate seamlessly from overviews of the earth to extremely detailed objects and buildings. In addition to photorealistic representations of the earth, Terravision displays a variety of data, including historical shots and architectural data, which allow users to navigate not only spatially but through time. All data are distributed and networked and are streamed into the system per the user's needs. Terravision was the first system to provide a seamless navigation and visualization in a massively large spatial data environment.

11. Terravision was implemented using the Onyx computers of Silicon Graphics, Inc. (SGI). Those computers were the most powerful available at the time for processing and displaying graphical data.

12. In the course of developing Terravision, ART+COM's inventors worked directly with SGI personnel to modify the software libraries for the Onyx systems to suit the requirements of Terravision. ART+COM's inventors disclosed to SGI personnel the intended capabilities of Terravision and provided copies of video capturing the operation of Terravision.

13. Michael Jones, the Chief Technical Officer of Google Earth, and Brian McClendon, in charge of the Google Geo Group and Vice President of Engineering of Google

Maps, were employed at SGI during the period that ART+ COM was developing Terravision. On information and belief, both Mr. Jones and Mr. McClendon were aware of Terravision and generally familiar with its capabilities from their tenure with SGI and Mr. Jones had access to proprietary information relating to Terravision. On information and belief, both Mr. Jones and Mr. McClendon were employed by Intrinsic Graphics after their employment with SGI.

14. In 2001, a company called Keyhole, Inc., was founded as a spin-off of Intrinsic Graphics to advance work on geospatial data visualization that had started at SGI. John Hanke, the Vice President of Product Management for the Geo Division of Google, was Keyhole's CEO. Mr. McClendon was employed by Keyhole and Mr. Jones served on its Board of Directors. The resulting product, called Earth Viewer, came to the public's attention during the 2003 invasion of Iraq, when CNN and other networks used its flyby imaging capability to illustrate their coverage of the war.

15. In April of 2004, Google acquired Keyhole and Earth Viewer, which was integrated with Google's business and released in 2005 as an application called Google Earth.

16. The experience provided to users of Google Earth is remarkably similar to that offered by Terravision a decade ahead of Google. Reproduced below are screenshots of Terravision from 1996 (left) juxtaposed against comparable ones taken from Google Earth in 2014 (right). A similar experience is provided to users of subsequent Google applications, including Google Earth Pro and, upon information and belief, Google Earth Enterprise.




17. On January 16, 2006, ART+COM's Director of Technology, Pavel Mayer (the first named inventor on the '550 Patent) sent Mr. Jones of Google an email, attached to which was a copy of the '897 patent and a short presentation regarding that patent and ART+COM's

plans to exploit it. Mr. Mayer expressed ART+COM's interest "in licensing the technology to other people with expertise or business interest" in the patent's area.

18. In response to Mr. Mayer's communications, Mr. Jones expressed his eagerness to speak with Mr. Mayer, as well as his belief that the '897 patent "seems useful as a defense against possible future legal action."

19. On March 22, 2006, Mr. Jones sent Mr. Mayer an email offering to fly to Germany to "see everything, talk about patent license, patent purchase, and maybe company acquisition if that is an interesting idea for you to consider." Mr. Jones indicated that "Google's attorneys have reviewed the patent and agree with me about the value it would bring."

20. Following that visit and on May 9, 2006, Mr. Mayer sent Mr. Jones an email stating his belief that they had "found a common ground regarding the value of the patent" and his confidence that they would "be able to agree on terms here that perfectly suite (sic) your purposes, fit into your budget and leave us without the feeling of being ripped off." From those discussions, Mr. Mayer understood and stated that three options would be explored: (1) acquisition of the patent by Google; (2) the establishment of a working relationship between Google and ART+COM, especially for user interface and product design; and (3) acquisition of a stake in ART+COM by Google.

21. On May 23, 2006, Mr. Mayer provided Mr. Jones with three videos demonstrating the operation of Terravision.

22. After some discussion between ART+COM and Google relating to the '897 patent, Mr. Jones on June 19, 2006, sent Patrick Paulisch of ART+COM an email stating that Google was "serious about buying the patent and can engage to do so right away."

23.     At the time of these discussions, Google was defending a patent infringement lawsuit that had been filed against Keyhole, its predecessor, in 2004.  *Skyline Software Systems, Inc. v. Keyhole, Inc.*. Civ. Act. No. 04-11129 DPW, United States District Court for the District of Massachusetts.  Google was interested in asserting ART+COM's Terravision work as prior art in that matter and expressed that interest in its discussions with ART+COM.  On July 17, 2006, Michelle Lee, a Google attorney, sent Mr. Paulisch an email expressing Google's interest "in taking Mr. Mayer's deposition some time before Aug. 11."

24.     Ms. Lee's July 17 email was sent in response to one of Mr. Paulisch's, sent three days earlier, in which Mr. Paulisch summarized a telephone call between them.  Per Mr. Paulisch, Google viewed the '897 patent as a "nice-to-have patent." Ms. Lee's email acknowledged that Mr. Paulisch's was "a fair summary of our conversation."

25.     ART+COM was not willing to sell the '897 patent for what Google was willing to pay and absent a business relationship of the type discussed.  On July 26, 2006, Mr. Mayer sent Mr. Jones an email expressing his displeasure with "the latest developments regarding the patent."

26.     On December 31, 2007, ART+COM filed an application for reissue of the '897 patent and for the pendency of that application ceased its communications with Google.

27.     On July 13, 2010, the '897 patent was reissued as the '428 patent, and on August 18, 2010, Mr. Mayer sent Mr. Jones, Mr. Hanke and others at Google a copy of the patent and a presentation relating to it.  The attachments to that email included a letter of Mr. Wiek's suggesting that Google Earth may require a license under the patent.

28.     Multiple Google personnel, including Mr. Hanke, Mr. Jones and Ms. Lee, were aware of the '897 patent since 2006 and of its reissue as the '428 patent since August of 2010.

As of the latter date, Google personnel also were aware that ART+COM believed Google required a license under the patent in connection with the method of operation of Google Earth.

29.     Multiple Google personnel, including Mr. Hanke, Mr. Jones and Ms. Lee, were aware of a substantial risk that at least Google Earth, Google Earth Pro, and Google Earth Enterprise infringe one or more claims of the '897 patent and its reissue in the '428 patent, which are identical in substance to claims in the '550 patent asserted in this lawsuit.

30.     Google directly infringes the '550 patent by providing, for example, Google Earth, Google Earth Pro, and Google Earth Enterprise to its customers and by operating or controlling the hardware (such as servers) and software that support the operation of those applications. If the claims of the '550 patent are properly construed, then one or more of those claims recite method steps that are entirely carried out by Google or its agents.

31.     To the extent method steps claimed in the '550 patent are construed to read on activity carried out not by Google but by its customers, Google has induced infringement of claims with such method steps by providing, for example, Google Earth, Google Earth Pro, and Google Earth Enterprise for users to download, along with web-accessible tutorials on how to operate them. Google's actions--for example, in providing Google Earth, Google Earth Pro, and Google Earth Enterprise along with web-accessible tutorials--demonstrate Google's specific intent to encourage others to infringe, and/or Google's willful blindness to the fact that its actions would induce infringement of, the '550 patent. If proven at trial, the allegations of ¶¶ 17-29 suffice to establish Google's knowledge of ACI's patent rights identical in substance to those protected by the '550 patent, as well as the substantial risk that those rights are violated by at least Google Earth, Google Earth Pro, and Google Earth Enterprise.

32. To the extent method steps claimed in the '550 patent are construed to read on activity carried out not by Google but by its customers, applications like Google Earth, Google Earth Pro, and Google Earth Enterprise are contributory infringements of claims having such method steps. Google's contributory infringements have occurred with knowledge that Google Earth, Google Earth Pro, and Google Earth Enterprise are a material part of the invention, are especially made or adapted for a use that infringes one or more claims of the '550 patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing uses. Google's actions--for example, in providing Google Earth, Google Earth Pro, and Google Earth Enterprise along with web-accessible tutorials--demonstrate Google's specific intent to contribute to others' infringement, and/or Google's willful blindness to the fact that its actions would contribute to infringement of, the '550 patent. If proven at trial, the allegations of ¶¶ 17-29 suffice to establish Google's knowledge of ACI's patent rights identical in substance to those protected by the '550 patent, as well as the substantial risk that those rights are violated by at least Google Earth, Google Earth Pro, and Google Earth Enterprise.

33. Google's infringement of the '550 patent has been willful. If proven at trial, the allegations of ¶¶ 17-29 suffice to establish Google's knowledge of ACI's patent rights identical in substance to those protected by the '550 patent, as well as the substantial risk that those rights are violated by at least Google Earth, Google Earth Pro, and Google Earth Enterprise. A reasonable company in Google's position in the summer of 2006 would have engaged ART+COM on acceptable terms of sale and followed through on the additional business relationships discussed at that time. Google's failure to follow through on terms for a business relationship and purchase of the '897 patent for a value consonant with its current and projected

revenues for at least the applications of Google Earth, Google Earth Pro, and Google Earth Enterprise was objectively reckless.

34. Google's infringement of the '550 patent has caused injury to ACI. Therefore, ACI is entitled to an injunction against future infringement and damages adequate to compensate for Google's past infringement, which in no event can be less than a reasonable royalty.

## DEMAND FOR JURY TRIAL

35. ACI hereby demands trial by jury on all claims and issues so triable, pursuant to Federal Rule of Civil Procedure 38(b).

## PRAYER

WHEREFORE, ACI prays for the following relief:

a. A judgment that Google has infringed one or more claims of the '550 patent;

b. A judgment that Google's infringement of the '550 patent has been willful;

c. An award of damages for Google's infringement;

d. An injunction against further infringement by Google;

e. An award of enhanced damages under 35 U.S.C. § 284;

f. An award of pre-judgment and post-judgment interest on the damages assessed, together with all costs and expenses;

g. An award of reasonable attorney fees under to 35 U.S.C. § 285; and

h. Such other and further relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: February 20, 2014 | FARNAN LLP |
| | |
| | /s/ Brian E. Farnan |
| | Joseph J. Farnan, Jr. (Bar No. 100245) |
| Of Counsel: | Brian E. Farnan (Bar No. 4089) |
| | 919 North Market St., 12th Floor |
| Scott F. Partridge | Wilmington, Delaware 19801 |
| BAKER BOTTS L.L.P. | 302-777-0321 Telephone |
| One Shell Plaza | 302-777-0301 Facsimile |
| 910 Louisiana Street | farnan@farnanlaw.com |
| Houston, Texas 77002 | |
| (713) 229-1569 | |
| scott.partridge@bakerbotts.com | |
| | *Attorneys for Plaintiff ART+COM Innovationpool GmbH* |