1                    UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF DELAWARE

3

4     ART+COM INNOVATIONPOOL GMBH  :   CA NO. 14-217-RGA

5                                  :   June 13, 2014

6              Plaintiff,          :

7                                  :   11:07 o'clock a.m.

8              v.                  :

9                                  :

10    GOOGLE INC.,                 :

11                                 :

12             Defendant,          :

13    ...........................:

14

15

16              TRANSCRIPT OF SCHEDULING CONFERENCE

17          BEFORE THE HONORABLE RICHARD G. ANDREWS

18              UNITED STATES DISTRICT JUDGE

19

20

21    APPEARANCES:

22

23    For Plaintiff:      FARNAN LLP

24                        BY:  BRIAN E. FARNAN, ESQ

25                        BY:  MICHAEL J. FARNAN, ESQ

```
 1                              -and-

 2                    BAKER BOTTS

 3                    BY:  SCOTT F. PARTRIDGE, ESQ

 4

 5

 6   For Defendant:    MORRIS, NICHOLS, ARSHT & TUNNELL

 7                    BY:  JACK B. BLUMENFELD, ESQ

 8                              -and-

 9                    AKIN GUMP

10                    BY:  CONO A. CARRANO, ESQ

11

12

13

14

15

16   Court Reporter:    LEONARD A. DIBBS

17                      Official Court Reporter

18

19

20

21

22

23

24

25
```

1

2                    P R O C E E D I N G S

3

4           (The proceedings occurred at 11:07 o'clock a.m. as

5     follows:)

6

7           THE COURT:  Good morning.  This is Judge Andrews in

8     Art+Com Innovation Pool v. Google, and the Rule 16 Conference,

9     Civil Action No. 14-217.

10          Can you tell me, please, who is on the line?

11          MR. B. FARNAN:  Good morning, your Honor.

12          This is Brian Farnan, as well as Michael Farnan, and we

13    have Scott Partridge from Baker Botts in Houston, Texas, on the

14    line as well.

15          THE COURT:  Thank you, Mr. Farnan.

16          For Google?

17          MR. BLUMENFELD:  And for Google, Your Honor, this is

18    Jack Blumenfeld and on the line is Cono Carrano from Akin Gump.

19          THE COURT:  I see Mr. Carrano.

20          And Mr. Blumenfeld, is that who is on line?

21          MR. CARRANO:  Yes, sir.

22          THE COURT:  All right.

23          And, so, gentlemen, when you do speak, if you could say

24    your name so that Mr. Dibbs, who's writing this down, will know

25    who's speaking, and, in fact, so I will know who is speaking.

1          So I have the Rule 16, and I see -- and I do appreciate

2     Mr. Farnan, Michael Farnan, that is, highlighting on the cover

3     letter what the points of dispute are, so thank you for that.

4          Am I correct in thinking, from my looking at the

5     docket, that we're talking about one patent here that issued

6     last year and claims priority to 1995; is that right?

7          MR. PARTRIDGE:  Your Honor, this is Scott Partridge.

8          That is correct.

9          THE COURT:  Okay.

10         MR. PARTRIDGE:  It is a reissued pat -- it was a

11    reissued patent.  There was an earlier reissue and an earlier

12    original patent, but the reissued patent that is at issue,

13    issued last year, and we have just one patent, which has one

14    interested claim that is being asserted among others.

15         THE COURT:  All right.

16         So, what I was thinking of, because what I'm going to

17    do is, I'm just going to pick either the plaintiff's or the

18    defendant's schedule, is there -- speaking on behalf of the

19    plaintiff, why, and please no more than one than minute, why is

20    your schedule better than the defendant's schedule?

21         MR. PARTRIDGE:  Your Honor, this is Scott Partridge.

22         I think you've, in part, underscored one of the reasons

23    why, and that is that it is a one-patent case.  There's only one

24    defendant.  This isn't a multi-defendant case.  The discovery on

25    the infringement, validity, and damages issues should be

1    relatively straightforward.  We have attempted to track what

2    we've seen in some of your recent schedules and how we approach

3    this.

4            I think, when you look at the Google proposed schedule,

5    there are delays built in right up front.  They are totally

6    unnecessary.  I think it sets the case back about -- by two to

7    three months right from the get-go in terms of identification of

8    the accused product and -- and the steps that follow.

9            And we thought that a reasonable trial date for this

10   case was a little over two years from the filing of the case in

11   February of this year.  I think we had it at 27 months or so,

12   which seemed like a reasonable period of time, and we

13   backtracked from there to fill in all of the dates.

14           Of course, all of this depends on what your schedule

15   looks like these days, your Honor, but the proposal we made we

16   thought reasonably tracked you're approach in other cases.

17           THE COURT:  All right.

18           Thank you, Mr. Partridge.

19           One question is, I did see that there are three or four

20   inventors, and that they -- and, for a minute, I thought they

21   were from downstate Delaware, because I saw the patent said

22   Berlin, comma, DE, but then I realized that was probably

23   Deutschland and not Delaware.

24           And how much discovery is likely to have to take place

25   outside the United States and -- and will that be a problem?

1          MR. PARTRIDGE:  You are correct, your Honor, that the

2    inventors are outside the United States.  There are four of

3    them.  We believe that at least three of them will be available

4    for this case, we're still working with the -- with the fourth.

5    And they're all residents in Germany at this time and we'll have

6    to work out, you know, where the depositions of those inventors

7    occur.

8          We have agreed with the other side as to a

9    proportionality figure for depositions taken in German, which is

10   26 hours allocated when and if they speak in -- in German as

11   opposed to English.

12         THE COURT:  Well, I guess the question I have, and

13   maybe the answer is obvious, are there going to be any problems

14   because of German law, or the Hague Convention, or some other

15   thing that's going to make getting these depositions difficult,

16   or is it, essentially, the only problem is, which is resolvable,

17   is that they'll be -- these are German-speaking individuals and

18   -- and you've already accounted for that?

19         MR. PARTRIDGE:  It's more the latter, your Honor.

20         I have met and talked to all four of them.  The

21   location of the deposition, I think is really going to be the

22   issue, as opposed to whether they cooperate.

23         I would expect that the depositions will either have to

24   occur at the Embassy in Germany or in London, and it may well be

25   that one or two of them will agree to come to the United States,

1    but we'll need to work that out.

2              THE COURT:  All right.

3              MR. PARTRIDGE:  They are all -- they are all third

4    parties.

5              THE COURT:  All right.

6              Thank you, Mr. Partridge.

7              And for the defendant's, what do you have to say?

8              MR. CARRANO:  Yes, your Honor.  This is Cong Carrano

9    for Google.

10             As Greg discussed, one of the issues will be that there

11   will be discovery in Germany for the inventors, as well as,

12   potentially, third parties.  The schedule reflects some

13   pragmatic aspect in that.

14             And although this is a one-patent case, there are 85

15   claims, which at this point we won don't know which terms are

16   asserted, so that's another complication to some extent.

17             Also, while those schedules, I think, are relatively

18   close, ours, we think, will be a more realistic view of the

19   scope of the claims, as well as the nature that discovery of the

20   inventors, essentially, the third parties will be abroad.

21             And the final point is, we don't think -- and maybe

22   counsel for plaintiffs can elaborate on this -- we don't know if

23   the inventors are going to be retained by the plaintiff's, or

24   have cooperated, or are going to be.  That's just an open issue.

25             And, finally, there is one more issue.

1      There's a -- we've alleged inequitable conduct with

2  respect to one of the inventors.  So it's a very key issue for

3  us in this case.

4      THE COURT:  I'm sorry, Mr. Carrano, you said a very

5  what issue?

6      MR. CARRANO:  A key issue for us.

7      THE COURT:  A key issue.

8      MR. CARRANO:  One of the inventors submitted a

9  Declaration to the Patent Office, which we think is false,

10  inaccurate, and material to the patent prosecution.

11      THE COURT:  All right.

12      Well, I do -- I did look at my calendar.

13      This, as Mr. Partridge, I guess was sort of suggesting

14  is that at the outside of when I have things scheduled, so I

15  think the plaintiff's schedule is reasonable.  And I think that

16  if it is set, there's every reason to believe that the parties

17  can live with it, and get the things done that they need to get

18  done.

19      So, as far as the dates go, I'm going to go with the

20  plaintiff's schedule.  The proposed trial date is May 16th of

21  2016, the proposed pretrial date is May 6th of 2016 at 8:30

22  a.m., and the hearing on the claim construction would then be on

23  May 11th, 2015.

24      Do any of those dates present a known problem?  Do any

25  of you have children who are graduating from college in 2016?

1          MR. PARTRIDGE:  Your Honor, this is Scott Partridge.

2          We will make those dates work.

3          MR. CARRANO:  Cono Carrano.

4          That's fine with us, your Honor.

5          THE COURT:  All right.

6          So, then, in terms of the other issues, I think there

7    was one that I sort of wanted to hear from you on, and the

8    others I think I'm prepared to just pick one or the other.

9          As far as -- as far as the disputed Paragraph 3E about

10   the depositions, it seemed to me, without knowing for sure that

11   the main issue in dispute was, it appeared as though defendant's

12   wanted to break the hours out between themselves and third

13   parties.  And, so they had more hours total, but perhaps fewer

14   hours allocated to themselves than the plaintiff wants.

15         Is that, in fact, the principle point of the dispute?

16         MR. PARTRIDGE:  I -- your Honor, this is Scott

17   Partridge.

18         I think it does have an impact, because the depositions

19   we would be taking are almost exclusively going to be with

20   respect to Google.  And, in this particular case, the people at

21   Google today, who developed Google Earth, and formed a company

22   called Keyhole prior to its acquisition by Google, and prior to

23   that, they were the at a company called SGI.

24         The SGI computers were used in my client's system --

25   systems since the '90's, and, so, there is need for discovery of

1    people who had access to my client's system early on.  All of

2    this is evident from the Complaint.

3          And, so, we would expect that we will need depositions

4    of -- of Google, not only the normal 30(b)(6), but depositions

5    of individuals who were involved in that chronology, as well as

6    technical and financial people.  So, we don't think that a

7    break-out between Google and third-party depositions is

8    appropriate in this particular case, and we would agree to a

9    total hours number to be divided up as the parties see fit as

10   discovery goes forward.

11         We're amenable to the hundred hour limit that we

12   proposed.  Essentially, they're at a 130.  And if we split the

13   difference, or something like that on that, we'd be fine.

14         THE COURT:  All right.

15         Mr. Carrano?

16         MR. CARRANO:  So, there -- obviously, there will be

17   some depositions of our people.  We've allocated about,

18   essentially, seven depositions I think is an ample number, and

19   the reason why we are looking to break them out is, one good

20   reason that's very important in this case, there's a third-party

21   discovery prior art, and I think even the plaintiff's counsel

22   alluded to this, some of those folks they're looking to be

23   deposed, will be third parties.

24         But we thought limiting party depositions down to 50

25   hours, seven depositions per party was reasonable, and then

1    allocating a separate chunk of hours, as we have, the

2    third-party discovery, which I think will largely be a

3    third-party discovery case, is also appropriate.

4              THE COURT:  All right.

5              So, as I'm listening to you and thinking about this, it

6    seems to me that I'm not in a good position to decide in advance

7    how much depositions of Google versus how much depositions of

8    others.

9              And, so, what I'm inclined to do is, is to take the

10   defendant's proposal, except to modify it by just saying the

11   total number of hours is a hundred and 15 hours, and the parties

12   can divide it up as they think best suits them.

13             And in terms of the -- to the extent that defendant's

14   proposal has something about how much the inventors can be

15   deposed, I would accept that.

16             And, basically, the 28 hours in English, or 48 hours in

17   German, and the way deposition time is calculated in the third

18   paragraph, I would accept that, but I don't think it's -- I

19   don't think it's a good decision, on my part, to specify how

20   much is third-party inventors and how much is Google up front.

21             You know, my experience is -- my experience is, and at

22   least my belief is that defendant's are worried about the abuse

23   of 30(b)(6) depositions, and my general belief is that

24   plaintiff's don't actually abuse on the 30(b)(6) depositions,

25   because time is valuable, and, so, they tend to use decent

1    judgment in terms of how much they do of that.

2           So, Mr. Farnan, when you resubmit this, do you

3    understand what I've said?

4           MR. B. FARNAN:  Yes, your Honor.

5           THE COURT:  All right.

6           In terms of --

7           MR. PARTRIDGE:  Your -- your Honor, this is Scott

8    Partridge, may -- may I express one concern?

9           THE COURT:  Yes.

10          MR. PARTRIDGE:  My -- my concern would be if they

11   devoted virtually all hours to one of the inventors, I run the

12   risk that I have one individual who could sit for nearly 28

13   hours for his deposition the way that it's written now.  That's

14   -- that is what I was worried about, that instead of balancing

15   the hours more reasonably amongst the inventors, that if they

16   decide to have one inventor sit for three or four days, I think

17   that would be asking too much of one individual.

18          It's been a long time since, I think in Federal cases,

19   parties have been allowed to keep a witness for a deposition for

20   three or four days, and I'd like to avoid that.

21          THE COURT:  All right.

22          Well, thank you for bringing that up, because even

23   though I had read this in advance, maybe that point has slipped

24   by me.

25          Mr. Carrano, what you have to say about that?

1          MR. CARRANO:  Yes, we don't anticipate three or four

2    days.  If you want to limit it to no more than two days for any

3    inventor, that's fine.

4          THE COURT:  Actually, why don't we limit it to no more

5    than ten hours in English.

6          MR. PARTRIDGE:  In English.

7          THE COURT:  All right?

8          MR. PARTRIDGE:  That's fine, your Honor.

9          THE COURT:  All right.

10         So, let's go on to next one, which is Paragraph 4A, and

11   there's a little dispute about what happens in the initial

12   discovery in patent litigation.

13         Leaving aside for the fact that this was written for a

14   multi-patent case, and we're now in a single-patent case, I

15   would like to go with the defendant's proposal where there's a

16   preliminary assertion of the claims that are allegedly

17   infringed.

18         All right?

19         MR. PARTRIDGE:  That's fine, your Honor.

20         THE COURT:  In Paragraph 4B, I would, again, would like

21   to go with the defendant's proposal, which I understand there,

22   you know, the provision says that they'll produce core technical

23   documents sufficient to show the structure and operation.

24         And I take it the dispute is, defendant is worried that

25   plaintiff's proposal means produce all documents, and

1   defendant's are trying to say, no, we don't have to at this

2   stage produce all documents, we just have to produce enough

3   documents.

4          And with that understanding, what the dispute is, I

5   agree with the defendant.

6          MR. PARTRIDGE:  Your Honor -- your Honor, this is Scott

7   Partridge, if I may?

8          THE COURT:  You may.

9          MR. PARTRIDGE:  We had tracked exactly the language in

10  the default order, and we agree that we don't want all

11  documents, and did not every read the default order as requiring

12  all documents.

13         The issue here was, for example language, as opposed

14  to, but not limited to which is in the default order, and we are

15  -- our concern was whether, for example, language will result in

16  a disclosure of documents that is more general and -- and

17  focuses on one of the categories that are listed in the default

18  order, as opposed to taking into account the but not limited to

19  language that's contained in the default order.

20         THE COURT:  All right.

21         So, what do you think the actual practical differences

22  between the two pieces of language is?

23         I mean I --

24         MR. PARTRIDGE:  My concern is that when you say, for

25  example, that we get operation manuals, and not any source code

1    when the source code may be necessary in order to evaluate the

2    way the Google system operates for purposes of preparing

3    appropriate infringement contentions.  And maybe we are all

4    talking about the same thing here, and have in mind that what --

5    whatever the productions is that needs to be in sufficient

6    detail that we can understand the operation of the Google

7    systems that will be accused here.

8           And if -- if that's the case, then, perhaps, this is a

9    distinction without a difference.

10          THE COURT:  Well, I think it more or less is, because I

11   do think it's sufficient to show the structure and operation of

12   the accused products methods or systems is the key language

13   here, not the but not limited to or for example.

14          So I think, actually -- so I do think this is a

15   distinction without a difference.

16          Mr. Carrano, do you have anything to say?

17          MR. CARRANO:  No, I think it's been explained fairly

18   well.  I mean our -- our concern was -- we -- we understand that

19   it's got to be sufficient.  We're just -- we're still early on

20   looking into what we can provide in this regard, and we just

21   didn't want to create a dispute by having to bind each category

22   document that we -- the source code is the most definitive

23   thing.  We'll probably produce that in this time frame.

24          So we just wanted a little bit more latitude as to the

25   type of documents as opposed to anything else.

1          THE COURT:  All right.

2          Well, you know, my reading of the language is the for

3   example, gives you more discretion as to which kinds of

4   documents to produce, but that the discretion should be guided

5   by the sufficient to show the structure of operation language,

6   so I'm going to go with your language.

7          Please don't let me down.

8          So, the next thing is Paragraph 5.

9          I'm going to delete that paragraph.

10         The next thing is Paragraph 10.

11         Oh, okay.  This was the one where I was actually

12  interested in hearing from you.  This issue has come up a few

13  times before, but why don't I give Mr. Partridge, you a chance

14  to speak for a minute, and then I will give Mr. Carrano a

15  chance.

16         MR. PARTRIDGE:  Yes, your Honor.

17         My starting point is, the requirement in the default

18  rules about proportionality, and that there should be efforts

19  made to identify and produce relevant information.

20         The question is, whether or not a privilege log that

21  requires us to identify analog documents that have been

22  exchanged between my law firm and our client from the inception

23  of our representation, actually meets the proportionality

24  requirement.

25         When I turn and I look to the answers provided by

1   Google, in this particular case, I asked myself, what issue that

2   has been framed by them thus far actually draws into question a

3   privilege log of the type that they're seeking her, and I can't

4   find an issue that really is called into question.

5       But one that they might have argued is drawn into

6   question, which is their laches defense.  We think is not an

7   appropriate defense in a patent case, based on the Supreme

8   Court's recent decision in the Raging Bull case in a copyright

9   context, which involves a statutory provision very similar to

10  the patent's statutory provision, and we have filed a motion

11  earlier this week to dismiss the laches defense.

12      And the laches defense is the basis for their claim to

13  need this kind of a log that I think the motion should be

14  decided before we get into that kind of a logging process.

15      The other issues that are in their answer that might

16  implicate this, Mr. Carrano has already identified inequitable

17  conduct, but that relates to a Declaration by one of the

18  inventors that pertains to activity from the mid-'90s as opposed

19  to anything that our log would reveal.

20      And the other defense that they've raised, that one

21  might think about in terms of a log is equitable estoppel, but

22  equitable estoppel has to do with Google's state of mind rather

23  than the state of mind of the plaintiff's here.

24      So, rather than logging hundreds of documents for

25  representations that began a couple of years ago, where there is

1    no point, other than the burden that would be imposed on us, we

2    don't think we should have the obligation to log.

3            And if down the road, during the course of the case,

4    some issue arises where such a log turns out to be relevant to

5    something, I think, at that point in time, that we can revisit

6    the subject.

7            THE COURT:  Well, Mr. Partridge, you sort of obliquely

8    addressed the one question I noted that I wanted to ask you,

9    which is, when did you begin representing the plaintiff's?

10           MR. PARTRIDGE:  It was more than two years ago, your

11   Honor.  Actually, I don't have the exact date in front of me,

12   but my recollection was that it was early 2012, or late 2011, in

13   that time frame.

14           And during that period of time, there have been lots of

15   e-mails, so we would be in a situation of logging what I think

16   are hundreds of e-mails.

17           I asked one of my associates to give me a guess

18   estimate, and he said, probably four or 500 if you count all the

19   e-mails as individual e-mails, as opposed to chains, it would be

20   a considerable log.

21           THE COURT:  And, so, one of the things, you know, the

22   language says about considering legal action for patent

23   infringement.

24           So your -- and, you know, tell me if the answer to any

25   question I ask is something that you don't want to waive

1    anything by answering the question, but if the patent issued in

2    2013, these things that were occurring more than a year before

3    the patent issued are for the purposes of considering legal

4    action for patent infringement against the defendant?

5            MR. PARTRIDGE:  Yes, your Honor, and I think what you

6    need to appreciate in that regard is that the patent that issued

7    last year was a reissue of an earlier patent, which was a

8    reissue of yet, again, an earlier original patent.

9            So during that entire time period, the -- the subject

10   matter of the patent at issue here was the subject matter of

11   patents that were in this very same chain, essentially, were

12   replaced by the more a recent reissue.

13           And I would agree that in connection with the

14   prosecution of the last reissue, which my firm did, other than

15   my firm handled, that with respect to the prosecution of that

16   reissue, we can provide a privilege log that relates to that

17   prosecution activity.

18           It's a privilege log that would go to the consideration

19   of legal action in this matter that goes back to the early 2012

20   time period, or maybe even late 2011, that I don't think is

21   appropriate, given the issues that have been raised in this

22   case.

23           THE COURT:  All right.

24           Thank you, Mr. Partridge.

25           Mr. Carrano?

1          MR. CARRANO:  Yes, some -- some of this is important as

2     far as they were making --

3          THE COURT:  Mr. Carrano, I'm sorry.

4          Unlike Mr. Partridge, you're coming through a bit

5     garbled, and I don't think that's because of the way you're

6     speaking, I think that's, perhaps, are you on a cellphone or

7     speaker phone?

8          MR. CARRANO:  Yes, I'm sorry, your Honor.

9          I'm in Korea right now, so I am on a cellphone.

10         THE COURT:  Okay, okay.  Well, I appreciate the

11    international scope of your practice.

12         All right.

13         Well, just -- can you just talk a little bit more

14    slowly, because I think that might help?

15         MR. CARRANO:  Thank you.

16         One of our concerns is, what has been discussed, is the

17    prosecution of the ratio, because that is an improper basis for

18    an inequitable conduct claim.  That's why we're seeking to have

19    that -- at least that logged.

20         I think we'd be -- our concerns would be met if they --

21    I think plaintiff has already offered this -- is to log that

22    aspect, the prosecution activity, and then if there's a need to

23    seek additional logging for additional issues, we could come

24    back to the Court and seek that later in time.

25         THE COURT:  It sounds like we have an agreement here.

1              MR. PARTRIDGE:  We do, your Honor.  That is acceptable

2    to the plaintiff.

3              THE COURT:  All right.

4              Well, then I think that's admirable that we've worked

5    this out without me having to decide anything, and I think it's

6    pretty sensible with what you all have agreed to.

7              Is there anything else, in terms of the Scheduling

8    Order, that we need to address?

9              MR. PARTRIDGE:  Your Honor -- Your Honor, this is Scott

10   Partridge.

11             The one thing I wanted to give you a heads-up about is

12   that the Scheduling Order does provide for a date when we submit

13   a Protective Order.

14             And the parties actually have been working on a

15   Protective Order, which originated with our using, as a base

16   model, exactly a Protective Order that was in another Google

17   case in -- in Delaware.

18             We made some modifications to tailor it to this

19   particular case, but we've tracked that, and we've had a lot of

20   back and forth about it.  I do believe that we're going to need

21   a discovery hearing with respect to the Protective Order,

22   because I don't think we're going to resolve some of source code

23   issues that have been raised in the Protective Order.

24             And whether your Honor just wants to wait and see the

25   process unfold, or whether we can set a date for a discovery

1    hearing on the Protective Order, at this juncture in order to

2    move this along, I guess we would prefer the latter, but if your

3    Honor wants to wait, that's fine with us, too.

4         THE COURT:  Well, Mr. Carrano, before you say anything,

5    one thing, Mr. Partridge is, just because I entered a Protective

6    Order that said something in some other Google case, at least in

7    terms of me, the chances of that meaning that I actually decided

8    the same issues that you're having now, probably unlikely.

9         I mean, as you know, most of the Protective Orders are

10   mutually agreed either one hundred percent or 99-1/2 percent

11   between the parties.  Any Protective Order I actually entered,

12   the chances of it actually reflecting any thought by me are just

13   about zero.

14        So, just because -- so, at least -- so, just because I

15   signed something before that had the provisions that you now

16   want, doesn't mean that I would sign it again.

17        In any event, Mr. Carrano, what do you think?

18        MR. CARRANO:  I'm -- I'm still optimistic that we can

19   reach an agreement, and we still have pretty much the rest of

20   the month to -- to resolve this.

21        So we would prefer not to schedule something at this

22   point, but, ultimately, we may have to do it.

23        MR. PARTRIDGE:  That's fine with us, your Honor.

24        THE COURT:  All right.

25        Well, I appreciate the heads-up, and I do think it's

1    hard to say -- I mean, realistically, we prefer to schedule

2    discovery disputes when the parties tell us that they are at an

3    impasse, not so much that they think there might be an impasse

4    coming.

5          And if -- you know, I'm going to have limited

6    availability late in the summer, so I guess the only other thing

7    I would say is, try -- try to work out your differences and

8    figure out if you are at an impasse relatively quickly, and I

9    can -- and I will be around, so that if we need to meet, I will

10   be here.

11         But then later in the summer, I may not be around for

12   awhile, all right?

13         MR. PARTRIDGE:  Very well, your Honor.  Thank you.

14         MR. B. FARNAN:  Your Honor, this is Brian Farnan.

15         Can I ask one question?

16         THE COURT:  Sure, yes.

17         MR. B. FARNAN:  Did you set a time for the Claim

18   Construction Hearing.

19         THE COURT:  It's in the -- oh, there's no time in

20   the -- let me see.

21         Do you know which day of the week that is, Mr. Farnan?

22         MR. BLUMENFELD:  It looks like a Monday, your Honor --

23   this is Jack Blumenfeld -- and -- and we had put in 9:00 a.m.

24         THE COURT:  Well, 9:00 a.m. is fine, but actually, if

25   it is a Monday, I would like to actually change that to be

1     mid-week.

2               Let me just check here.

3               All right.

4               Yes, May 11th is a Monday.

5               Can we move that to maybe -- can we move it to May

6     12th, and we can do 9:00 a.m.?

7               MR. PARTRIDGE:  That's fine, your Honor.

8               MR. CARRANO:  That's fine for Google.

9               THE COURT:  All right.  Okay.

10              Anything else?

11              MR. PARTRIDGE:  Thank you for your time.  I really

12    appreciate it.

13              THE COURT:  All right.

14              Well, thank you.  Thank you for your -- you've been

15    very helpful in this conversation today.  You know, I don't

16    really like doing things on the telephone.  This worked out

17    better than I would have expected.

18              In any event, I will look forward to getting from Mr.

19    Farnan an agreed-upon order in light of what we said here today.

20              And, as I said, if you reach an impasse on the

21    Protective Order, try to do it sooner rather than later, and I

22    will get you in and resolve the impasse, okay?

23              Otherwise, have a nice weekend.

24              MR. PARTRIDGE:  Thank you, your Honor.

25              MR. CARRANO:  Thank you, your Honor.

1            (The proceedings concluded at 11:42 o'clock a.m.)

2                        *  *  *  *  *

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25