```
                   UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF DELAWARE


ART+COM INNOVATIONPOOL GMBH,  :   CA NO. 14-217-RGA
                              :
            Plaintiff,        :
                              :
         v.                   :   December 22, 2014
                              :
GOOGLE,                       :
                              :
            Defendant.        :   9:07 o'clock a.m.
.............................:



                   TRANSCRIPT OF TELECONFERENCE
               BEFORE THE HONORABLE RICHARD G. ANDREWS
                   UNITED STATES DISTRICT JUDGE



APPEARANCES:

For Plaintiff:      FARNAN LLP
                    BY:  MICHAEL J. FARNAN, ESQ
                              -and-
```

```
 1                         BAKER BOTTS LLP

 2                         BY:  SCOTT F. PARTRIDGE, ESQ

 3                         BY:  C. RYAN PINCKNEY, ESQ

 4

 5

 6   For Defendant:        MORRIS, NICHOLS, ARSHT & TUNNELL

 7                         BY:  PAUL SAINDON, ESQ

 8                                   -and-

 9                         BY:  AKIN GUMP LLP

10                         BY:  CONO A. CARRANO, ESQ

11

12

13

14

15

16   Court Reporter:       LEONARD A. DIBBS

17                         Official Court Reporter

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2
 3              THE COURT:  Good morning.
 4              This is Judge Andrews in Art+Com InnovationPool v.
 5   Google, which is Case No. 14-217.
 6              I have a court reporter with me, so when people speak,
 7   I would appreciate it if they identify themselves, so that both
 8   the Court Reporter and I know who's speaking.
 9              Who is on the line, please?
10              MR. FARNAN:  Good morning, your Honor.
11              This is Michael Farnan for the plaintiffs.
12              On the line is Scott Partridge and Ryan Pinckney from
13   Baker Botts.
14              MR. PARTRIDGE:  Good morning, your Honor.
15              MR. PINCKNEY:  Good morning, your Honor.
16              MR. SAINDON:  Good morning, your Honor.
17              This is Paul Saindon from Morris Nichols.
18              And with me is Cono Carrano from Akin Gump for Google.
19              THE COURT:  So, good morning to you all.
20              If I'm understanding the letter that has been filed,
21   Docket Item 55, right?  You want me to sign the attached
22   proposed Order relating to the discovery of electronically-
23   stored information, and you're both in agreement on that, so I
24   will sign that.
25              And, if I further understand, basically, the discovery
```

1  issues that were brought up the last time, when we met in
2  person, they were not part of the discussion today.
3          And, basically, the only thing on the table this
4  morning is Google's request to have the number of asserted
5  claims -- to set a schedule for lowering the number of asserted
6  claims; is that correct?
7          MR. PARTRIDGE:  That's correct, your Honor.
8          THE COURT:  And who are you?
9          MR. PARTRIDGE:  This is Scott Partridge.
10         I apologize.
11         THE COURT:  No, that's all right.  I just -- you know,
12 we'll get used to it.
13         As I understand it, the plaintiff is currently
14 asserting 40 claims?
15         MR. PARTRIDGE:  Your Honor, that's correct.  We reduced
16 that from 82, in two stages thus far down to -- I think it was
17 52 -- and now down to 40.
18         THE COURT:  All right.
19         And, so, when does the -- when does the Markman --
20 where are we exactly in the Markman process?
21         MR. PARTRIDGE:  We have just begun, your Honor.  We
22 exchanged disputed claim terms last Friday.  The plaintiff
23 identified, I think 19, and with we identified eight.  They
24 overlap, so we're looking at about 20 claim terms.
25         I think probably by the time we exchange constructions,

1  which occurs in early January, with a Markman Hearing in
2  February, you're going to see less than 15, would be my guess on
3  the basis of what's been done so far.
4          So, the briefing won't start until some time later in
5  January.
6          THE COURT:  All right.
7          And does the other side think that's roughly correct?
8          MR. CARRANO:  Yes, your Honor.  This is Cono Carrano.
9  I think there's about 26 claim terms in dispute.
10         And, as far as the briefing, it starts in February --
11 February 6th is the first -- the opening brief for claim
12 construction, but, otherwise, it's accurate.
13         THE COURT:  All right.
14         So I guess the question is -- so I appreciate that the
15 plaintiff has reduces the number of terms from an unreasonably
16 excessive number to 40, but it does seem like 40 is still a
17 pretty big number.
18         I guess what I'm wondering is, plaintiff, why do you --
19 why do you need 40 going into the Markman?
20         MR. PARTRIDGE:  Well, your Honor, I think that at this
21 point, the number of claims -- the number of claims that are
22 asserted are not effecting Markman at all.
23         In fact, the claim terms that have been identified by
24 the parties could all be in play if we only identified nine
25 claims.

1          Half the claim terms come out of the Independent Claim
2     1.  And, frankly, I do think they overlap, so that we're already
3     less than 20 claim terms.
4          So I think the -- the supposition that the Markman
5     hearing process would somehow be changed, as a consequence of
6     changing the number of asserted claims at this point is
7     incorrect.  That isn't going to be the case.
8          So that the present circumstance, we don't think
9     there's an increase cost or burden that the parties are
10    suffering at this point, if we allow the Markman process to
11    proceed, exchange constructions, see where people are with
12    respect to that, before any further claim reduction is required
13    in this case.
14         We had indicated in our previous call -- and it's not
15    set forth in this letter -- there are four different Google
16    products that are at issue that were introduced at different
17    points in time.  And we have two sets of claims in this patent.
18         One, the original set, and the second set, a set that
19    came out of the reissue of this patent about two years or so
20    ago.
21         And, so, it really is, you know, two sets of claims
22    against four different products.  All of the claims but one are
23    dependent claims.  The two sets of claims are structured
24    differently.  And that different structure effects, I think,
25    validity issues.  And the timing of the assertion of those

1   claims, essentially, effects both infringement, because some of
2   the products at Google were introduced briefly and, in effect,
3   potentially damages.  And we'll have to see how that all plays
4   out as we go forward.
5           But I think there is a rational here, at least at the
6   present time, allowing this number of claims to -- to go
7   forward.
8           It doesn't, when you look at the impact on the case, it
9   doesn't really have an impact at the present time.  And the only
10  fact that I'm aware of, that the defendant has actually
11  identified thus far, is an impact on their proposed filing of
12  the IPR.
13          I don't think the filing of an IPR is a basis for the
14  Court to decide what happens in a lawsuit.  Whether that's one
15  IPR, or two IPRs, it really shouldn't matter to the Court on
16  making a decision on an appropriate number of claims at this
17  stage of the case.
18          THE COURT:  So, even though you say it's two sets of
19  claims, all of these dependent claims, whether they're in the
20  original patent, or the reissue, depend on the exact same
21  independent claim, right?
22          MR. PARTRIDGE:  That's -- that's correct.  The
23  dependent claims are stacked differently in the reissue than
24  they are in the -- in the original.
25          In the original, I think with a few exceptions, the

1    dependent claims would be dependent on Claim 1.  And then the
2    reissue claims, that is not the case.
3            And that's why we end up with a relatively small
4    number.  I think it will be less than 20, as I said, by the time
5    we go forward to the Court.
6            In fact, I think legitimately there are only ten or 12
7    claim terms in dispute.  That's why we end up with a relatively
8    manageable number of disputed claim terms at this stage of the
9    case.
10           THE COURT:  So, just -- there was something I didn't
11   understand what you just said.  You said -- well, there are a
12   couple of things I didn't understand -- but one is, you said the
13   reissue claims are stacked differently.
14           What I would interpret by that is, what you're saying
15   is, there's -- that some of them are, shall we say, grandchild
16   dependent claims of an independent claim.  That there's some
17   intermediate dependent claim, that -- so that whatever the
18   common limitation is of the first dependent claim is different
19   in the first set of patents, or the first sets of claims than
20   the second, is that what you mean?
21           MR. PARTRIDGE:  That's, essentially, right, your Honor.
22           In other words, instead of having the dependency all
23   tied back to Claim 1, there is a -- for those claims that were
24   related to each other from a technological standpoint in the
25   original set of claims, they're now written to be dependent, one

1    upon the other, so that you end up with a sort of -- I used the
2    word "stack" -- but another way to say that is a multiple --
3    it's not multiply dependent claims.  Like one claim is depending
4    on three or four.
5            But a first dependent claim, and then a second
6    dependent claim, dependent on that dependent claim, which is
7    dependent upon Claim 1.
8            And that sort of, as I described it as stacking, has an
9    effect on the issues in the case, particularly validity, and as
10   well as infringement.
11           THE COURT:  All right.
12           What are the accused products here?
13           MR. PARTRIDGE:  The accused products are probably the
14   one that you would be familiar with, would be Google -- Google
15   Earth.  If you've ever used Google Earth --
16           THE COURT:  Yes.
17           MR. PARTRIDGE:  -- that's the primary product.
18           There are some related products that came later, just
19   before the filing of this lawsuit, or maybe it was right at the
20   time of the filing of this lawsuit, Google introduced a mobile
21   version of Google Earth.
22           But you just can't wrap Google Earth into a mobile
23   application.  There were changes in order to make a mobile
24   version of Google Earth.  There's that product.
25           And then there are some products that they make

1    available on more of an enterprise basis, where you license the
2    product.  And there are a couple versions of that.  And there
3    are some variations between -- between these products.
4         And those are the four products that are currently in
5    issue in the case.
6         THE COURT:  All right.
7         MR. PINCKNEY:  Your Honor, this Ryan Pinckney.
8         May I speak very briefly?
9         THE COURT:  Yes.
10        MR. PINCKNEY:  I was just going to add there's also a
11   product, Google Maps with Earth.  And, so, they took the
12   previous product, Google Maps, and incorporated Google Earth
13   into it.  I believe that's the fourth one that Scott may not
14   have included.
15        THE COURT:  All right.
16        MR. PARTRIDGE:  That's correct.
17        THE COURT:  All right.
18        Mr. Carrano?
19        MR. CARRANO:  Yes, yes.  Thank you, your Honor.
20        As you'll recall in the November 20th conference we had
21   with you, Art+Com wanted the invalidity contentions and the
22   Alchemy code, which we did the invalidity contentions, but they
23   currently -- at that time there were 52 claims asserted, so they
24   had those since December 5th.
25        We resolved the third-party issues with the Alchemy

1    code.  And we made that available, and they inspected it, and
2    they continue to inspect that.
3             From our perspective, we've done what they asked us to
4    do, to give them the additional information, the invalidity
5    contentions, and the Alchemy code.  And our production is,
6    essentially, complete, particularly with the function and
7    operation of the accused products, which they were referring to.
8             So we think they have all the information to reasonably
9    get down in the case to what would be on par with other patent
10   cases in this district, and otherwise in the federal model.
11            I mean 20 claims at this point in the case, we think is
12   objectively generous.  It's a one-patent case.  Maybe you could
13   argue it's a 1.4 patent case, a 1.5 patent case.
14            We think that's more than fair.  We think if they want
15   to, if they have to later in the process change claims, or add
16   claims, if they show it for cause, we think that's consistent
17   with the  Katz case, which they cite in their letter.
18            But we think objectively, and specifically to this
19   case, 20 claims at this point is more than enough.
20            And, then, as far as the impact on this case, I
21   disagree a little bit on that issue.
22            Of the 40 asserted claims, three-quarters of them
23   roughly have claim term disputes.  So, if they reduce the number
24   of claims asserted, invariably that will likely knock out many
25   of the disputed terms, or a good proportion of the disputed

1      terms.

2              And, then, two, of course, is not just about the

3      Markman process, the Markman Hearing, there's other discovery,

4      there's other aspects of the case, which would be narrowed

5      should they be required to reduce the number of claims now.

6              So that's -- we think with -- with respect to the

7      merits of this case, which we don't think are unique, 20 claims

8      at this point is more than fair, and more in line with cases in

9      court, as well as throughout the country.

10             MR. PARTRIDGE:  And, your Honor, may I a respond?

11             THE COURT:  Sure.

12             Is this Mr. Partridge?

13             MR. PARTRIDGE:  Yes, it is.

14             I apologize again.  I forget to introduce myself.

15             As to the first point about Google having provided what

16     we asked, it is true that several of the principle arguments we

17     made at the last hearing concerning the invalidity contentions

18     of the code, has been produced by Google.

19             But, at that time, we did not limit ourselves, in terms

20     of our view of the timing of the claim reduction, to the

21     provisioning of those -- of fact discovery by Google.

22             It was our position then, and it is our position now,

23     that this should be done in a structured manner, so that we can

24     make informed judgments about what claims to reduce, and that

25     included consideration of claim construction initially by the

1   parties.
2          As to the impact, I heard nothing in what counsel said
3   that impacts this particular case, other than an argument for
4   what constitutes, more or less, an arbitrary limit on the number
5   of claims to be asserted at this point, without pointing to any
6   specific impact that would occur in the case.
7          And, indeed, while it may be true that three-quarters
8   of the claims have disputes in them, those are duplicated
9   disputes from claims.  And the truth of the matter is that all
10  of those disputes could be wrapped into nine total claims, so
11  that the number of asserted claims is -- is not a factor here.
12         And insofar as discovery is concerned, there haven't
13  been any discovery requests made by the parties to date that are
14  impacted by the number of claims.
15         Both side have provided their documents in discovery,
16  and for the most part, simply have done that relatively
17  recently.  And there aren't any outstanding interrogatories --
18  depositions that one can point to as a basis for complicating
19  this case at this point.
20         So I think the position of Google, as to a claim
21  reduction at this point, is based entirely on an arbitrary
22  approach to claim reduction, which I think is contrary to what
23  the Federal Circuit suggested in the Katz case is appropriate.
24         THE COURT:  Where do we stand, in terms of the number
25  of asserted prior art references?

1              MR. CARRANO:  Yes.  This is Cono Carrano for Google.

2              Currently there are 43 references cited in the

3    invalidity contentions.  That was for the 52 claims.

4              So I don't think we have done a calculation yet, as far

5    as the reduced -- reduced then to 40 claims.

6              I think this is where we're going.  We think that we

7    could, once we see a reduced set, we could probably get the

8    prior art references down to 30, after we reduced that.  And

9    after the Markman, likely around 20.

10             MR. PARTRIDGE:  Again, your Honor.

11             This is Scott Partridge.

12             We're not asking for a reduction in prior art

13   references at this point in time.  Expert discovery is still a

14   good ways off.

15             And I don't think that the number of prior art

16   references is effecting the case at this -- at this particular

17   juncture.

18             It will down the road, obviously, just that the number

19   of total claims will have some implication at some point in the

20   case, but I don't think either is the circumstance right now.

21             THE COURT:  All right.

22             And the date that was suggested, I think in the letter

23   for this reduction by Google, was January 5th.

24             Is that tied to the claim construction process in some

25   way, or is that just a date that's not too far in the future,

1   but gives, in Google's opinion, the plaintiff enough time to
2   make an intelligent decision?
3          MR. PARTRIDGE:  Yes, your Honor.  The exchange of claim
4   construction is January 9th.
5          If Art+Com wants, or need more time, I think we can
6   move the reduction of claims to after that point somewhere
7   between -- somewhere up until the 16th of January.  That way we
8   can see the constructions, and maybe we can negotiate the
9   constructions as well as -- well, they can reduce the claims in
10  that period of time.
11         So I think anywhere between now and the 16th of January
12  would work.
13         THE COURT:  And, Mr. Partridge, is there some prejudice
14  to Art+Com to doing a reduction by January 16th that you can
15  point to?
16         MR. PARTRIDGE:  Well, you know, I think -- well, the
17  answer is, I think is generally yes, in that by January 15th or
18  16th, or whatever the time is in mid-January, we're still at a
19  point in this case where we don't know, ultimately, what the
20  Court will do with respect to our claim construction, which
21  certainly is going to impact how we look at the infringement
22  case and the validity case with respect to these claims.
23         And I would say the question is -- is not whether the
24  plaintiff is prejudiced by the defendant's attempt to reduce
25  claims, but whether or not there is truly an impact on the

1   defendant as a consequence of the number of claims asserted
2   here.
3            So the shoe, I think, is on the wrong foot, in terms of
4   prejudice to the plaintiff.
5            And what we just heard from the defendant is -- is a
6   lack of basis for the reduction as of the middle of January.
7            This reduction doesn't effect the number of claim
8   disputes that we will be briefing before the Court.
9            The reason, I think, for the request in the reduction
10  of claims has to do with the stated position of -- of Google
11  from the earlier hearing, that it wants to file IPRs before the
12  Patent Office.  And I don't think that's an appropriate basis
13  for the Court to make the judgment about a reduction of claims.
14  With that reduction, that's being requested, is one that strikes
15  me as arbitrary, and not tied to a particular prejudice that the
16  defendant can point to in this case that justifies the
17  reduction.
18           THE COURT:  All right.
19           I'm sorry, Mr. Carrano, did you want to say something
20  else.
21           MR. CARRANO:  Just quickly.
22           On the November 20th conference, we mentioned the IPR
23  not as a basis for reducing the claims, but for just putting
24  everyone -- being fair about what we plan to do, so the Court
25  knows as well as Art+Com.

1          Second of all, I don't think -- again, like I said
2     before -- objectively for a one-patent case, 40 we think is out
3     of line.
4          And, then, specifically, in this case, as far as an
5     impact, again, three-quarters of the claims that are being
6     asserted, currently 40 are involved with the disputed terms.
7          So, there is an immediate impact, and down the road,
8     obviously, the impact to Google, as far as discovery, they can
9     ask for 30(b)(6) witnesses, and what have you, about all 40
10    claims.
11         So we think there is an obvious impact to Google over
12    time, immediately with claim construction, and then throughout
13    the rest of the case.
14         THE COURT:  All right.
15         So I'm going to direct that the plaintiff reduce the
16    number of asserted claims to 20 by January 16, 2015.
17         I would note, first off, that in terms -- and I would
18    say, basically, in support of that two things.
19         One is that there is a benefit to the case, generally
20    in terms of forcing the parties to focus in on -- to narrowing
21    the case.  So there's a generalized benefit, even if there is no
22    particular point in time to which, or at which, a party can
23    point to, need to do that or to otherwise be prejudiced.
24         I would also note, as a second point, that the
25    plaintiff's response, as to whether there's some prejudice to

1   them is so generalized as to be, I think, essentially

2   meaningless.  They don't what my claim construction decisions

3   might be.

4          Yes, that's true.  But then that's -- if that argument

5   were carried to a logical extreme, there would never be any

6   reason to limit the claims before the Markman.

7          And I do think that 20, no matter how you slice and

8   dice the number of claims and the number of products, still

9   allows the plaintiff to pick a representative number of claims,

10  even assuming that it can't assert any one claim against more

11  than one product, which I think is unlikely, although, I don't

12  actually know.

13         So I'm going to order the reduction to 20 by that date,

14  January 16th.

15         I'm not going to say -- I'm not going to set a schedule

16  for doing any further reduction after the Markman, because I

17  don't think that at this point I actually need to.  I think

18  going through the Markman process will give me a better idea of

19  how all these claims interrelate with each other, which I do not

20  have right at this minute.

21         So I think we'll take it one step at a time, and just

22  because I'm reducing -- ordering the reduction now, doesn't mean

23  that I will necessarily order the reduction that Google has

24  asked afterwards, or maybe even any reduction at all.  I just

25  can't tell.

```
 1              I also note that at this time, that in terms of --
 2     there's no particular request relating to the reduction of
 3     invalidity, prior art references, but I will certainly consider,
 4     at a later time when, and at post-Markman, I would certainly
 5     consider any request for further reduction in claims, at the
 6     same time as considering the number of prior art references.
 7              So I will enter a written order.
 8              Is there anything else that I can do for you this
 9     morning?
10              MR. PARTRIDGE:  I think that covers it, your Honor.
11              Thank you.
12              MR. CARRANO:  Thank you, your Honor.
13              THE COURT:  All right.
14              Well, thank you for calling in.
15              Have a nice holiday and I will see in the new year.
16              (Counsel responded "Happy holiday" and "thank you, your
17     Honor.")
18              (The proceedings adjourned at 9:33 o'clock a.m.)
19                         * * * * *
20
21
22
23
24
25
```