# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

(302) 658-9200
(302) 658-3989 FAX

**Paul Saindon**
(302) 351-9466
(302) 225-2567 FAX
psaindon@mnat.com

September 9, 2015 - Original Filing Date
September 16, 2015 - Redacted Filing Date

REDACTED - PUBLIC VERSION

**BY E-FILING**

The Honorable Richard G. Andrews
United States District Court for the District of Delaware
844 N. King Street
Wilmington, Delaware 19801

      Re:    *Art+Com Innovationpool GmbH v. Google Inc.*,
               C.A. No. 14-217 (RGA)

Dear Judge Andrews:

      Google Inc. ("Google") respectfully submits this letter in response to the Court's Order (D.I. 176) requesting briefing on Plaintiff's failure to disclose information about financial interests in this litigation. Google has sought discovery of all entities and persons that have a financial interest in this litigation or the patents-in-suit. Plaintiff has improperly withheld this information on the grounds that this information is "not discoverable." *See* D.I. 191 at p. 1.

      **1.**    **Discovery Regarding Potential Bias of Witnesses**

      Plaintiff claims that "no unresolved discovery remains with respect to any potential bias of witnesses in this case." *Id.* at p. 3. That is far from the truth. Plaintiff has failed to mention that Google identified Baker Botts and at least one Baker Botts attorney (Paul Morico) as potential trial witnesses. Baker Botts and Mr. Morico were substantially involved in the preparation and prosecution of the patent application leading to the '550 patent. Testimony from Baker Botts and Mr. Morico is highly relevant to Google's inequitable conduct defense. *See, e.g.,* D.I. 12 at ¶¶ 47-65. Furthermore, given that Baker Botts has an admitted financial interest in this litigation, the full scope of Baker Botts and Mr. Morico's motivations and biases as reflected in the financial agreement(s) is relevant to Google's inequitable conduct defense, including at least to an intent to deceive the Patent Office into issuing the '550 patent.

The Honorable Richard G. Andrews
September 9, 2015
Page 2

Therefore, Google respectfully requests that the Court to order production of the agreements relating to Baker Botts and Mr. Morico's financial interests in the asserted patent and litigation, so Google may test the witnesses' credibility and potential biases during trial.

## 2. Additional Parties with Financial Interests in this Litigation

Plaintiff claims that "all financial interests of all potential witnesses in this case have already been disclosed to Google." D.I. 191 at p. 3. Not so. Plaintiff's September 2, 2015 letter to the Court confirms that there are at least three additional parties with financial interests in the litigation. Specifically, Plaintiff identified the following new parties: (1) a "non-testifying technical consultant" who is entitled "to receive a small percentage of the proceeds" should Plaintiff prevail in the litigation, (2) a third party that serves as a litigation consultant ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ and (3) two agreements between Plaintiff and Baker Botts concerning the litigation (but Plaintiff declined to submit the "second, earlier agreement" for *in camera* review to permit the Court to verify its claims). This is the first time Plaintiff identified the existence of these agreements, despite Google's repeated requests.

Plaintiff alleges that these individuals' "interests are spelled out in detailed agreements and are limited to financial interests in the proceeds of the litigation." D.I. 191 at p. 3. Based on Plaintiff's representations, these agreements are discoverable under Rule 26(b)(1) because financial interests in the litigation or the asserted patent are relevant to at least issues of ownership, standing, and witness bias. For example, the fact that Plaintiff's consultants and its litigation counsel are entitled to receive a portion of the recovery in this lawsuit is relevant to determining ownership of the asserted patent. *See, e.g., Alfred E. Mann Found. For Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1361 (Fed. Cir. 2010) (right to receive a portion of the recovery in infringement suits brought by another party is relevant in determining ownership); *Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1191 (Fed. Cir. 2007). Furthermore, these agreements reveal whether any of these individuals have an ownership interest in the patents, whether they have the ability to control the litigation in any respect, or whether Plaintiff has licensed or assigned its rights in manner that implicates its standing to bring this case. *Accord Larson v. Correct Craft, Inc.*, 569 F.3d 1319 (Fed. Cir. 2009) (the plaintiff had no standing to bring the lawsuit because he no longer had a "concrete financial interest" in the patents at issue).

These financial agreements are also discoverable as the basis for potential bias of the witnesses. For example, Baker Botts and Mr. Morico may be called to testify at trial regarding Google's inequitable conduct defense. Therefore, Plaintiff and Baker Botts' financial arrangement may inherently reveal a conflict of interest or appearance of bias. Uncovering Baker Botts' financial stake in the outcome of the litigation may expose bias that would undermine the witnesses' credibility. For these reasons, Google has shown "a substantial need for the materials to prepare its case and [it] cannot . . . obtain their substantial equivalent by other means." *See* Fed. R. Civ. P. 26(b)(3)(a).

The Honorable Richard G. Andrews
September 9, 2015
Page 3

Finally, the agreements are not protected by the attorney-client privilege or the work product doctrine. As the Court recognized, "Plaintiff specifically disclaimed the attorney-client privilege as the basis for its objection." D.I. 176 at 2 (citing D.I. 163, Ex. D. p. 3). Plaintiff now claims that these documents "are subject to work product protection," but it provides no support for that threadbare allegation. D.I. 191 at p. 4. To be sure, Plaintiff makes no suggestion that the agreements contain the mental impressions or legal theories of its attorneys. *See In re Application of the Republic of Ecuador*, 280 F.R.D. 506, 512 (N.D. Cal. 2012) (explaining that the purpose of "the work product rule is to protect the mental impressions and legal theories of a party's attorneys, not its experts."). Thus, Plaintiff has improperly withheld these documents based on a conclusory work product claim.

Accordingly, Google respectfully requests that the Court require Plaintiff to produce each of these agreements so that the scope of the individual's financial interests can be determined.

3.    **Plaintiff's Litigation Funding Agreement**

Plaintiff identifies a ▮▮▮▮▮▮▮ agreement between Plaintiff and ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮. D.I. 191 at p. 5 n. 5. Plaintiff contends they are unaware of "a single judicial authority holding that such an agreement is discoverable." D.I. 191 at p. 5. However, courts have ordered the production of litigation funding agreements and other documents exchanged with a third party financier to the litigation.

For example, in *Cobra International, Inc. v. BCNY International, Inc.*, Case No. 05-61225-CIV, Dkt. No. 508 (S. D. Fla. Nov. 4, 2013) (Ex. A), the court ordered the production of a litigation funding agreement that the plaintiff had withheld on relevance and privilege grounds. The court disagreed, finding that the litigation funding agreement was relevant to whether ownership of the patent had been transferred and who had control over decisions in the litigation. The court also rejected the plaintiff's claim that the documents were privileged and order the plaintiff to produce the document within 10 days. *Id.* at 5.

Likewise, in *Leader Technologies v. Facebook*, 719 F. Supp. 2d 373, 376 (D. Del. 2010), the patentee withheld documents shared with prospective litigation financing companies on the basis that they were privileged under the common interest doctrine. After considering that the plaintiff had the burden to establish that the documents were privileged, surveying Third Circuit precedent regarding the common interest doctrine, and weighing other policy considerations and ethical guidelines, then Magistrate Judge Stark ordered production of the documents. Judge Farnan upheld the ruling that the common interest privilege did not exist between the patentee and prospective litigation financing companies. In short, the court concluded that the common interest doctrine is an exception to the general rule that the attorney-client privilege is waived following disclosure of privileged materials to a third party.

To be sure, communications between clients and attorneys "allied in a common legal cause" remain protected because it is reasonable to expect that parties pursuing common legal interests intended resultant disclosures to be "insulated from exposure beyond the confines of the

The Honorable Richard G. Andrews
September 9, 2015
Page 4

group."  *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996)). However, to provide "sufficient force" to a common interest claim of privilege, the withholding party must demonstrate that "the disclosures would not have been made but for the sake of securing, advancing, or supplying legal representation." *Id.* at 1389 (citing *In re Grand Jury Subpoena Duces Tecum*, 406 F. Supp. 381, 386 (S.D.N.Y. 1975)).  Further, for a communication to be protected, the interests must be "identical, not similar, and be legal, not solely commercial." *Id.* at 1390; *Union Carbide Corp. v. Dow Chem. Co.*, 619 F. Supp. 1036, 1047 (D. Del. 1985).

In this case, the ▮▮▮▮▮▮▮ agreement between Plaintiff and the ▮▮▮▮▮▮▮ is relevant to determine whether ownership of the asserted patent has been transferred and who has control over decisions in the litigation.  Furthermore, Plaintiff has failed to demonstrate that this information is protected under the common interest privilege.  It has made no showing that the litigation funding agreement would not have been made but for the sake of securing, advancing, or supplying legal representation, or that its interests with the third party financier are "identical" and "legal," rather than "solely commercial."

For these reasons, Google respectfully requests that the Court order production of the ▮▮▮▮▮▮▮ agreement and any related documents concerning the ▮▮▮▮ arrangement.

Respectfully,

*/s/ Paul Saindon*

Paul Saindon (#5110)

PS:ncf
Enclosure
cc:  Clerk of the Court (by hand delivery)
      All Counsel of Record (by e-mail)
9442637