# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 05-61225-CIV-MARRA/MATTHEWMAN

COBRA INTERNATIONAL, INC.,

    Plaintiff,

vs.

BCNY INTERNATIONAL, INC., et al.,

    Defendants.

_____/

FILED by ___ D.C.
NOV 0 4 2013
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND BETTER ANSWERS TO INTERROGATORIES [DE 483]

THIS CAUSE comes before the Court upon Defendants, BCNY International, Inc., Jordara Far East, Inc., Fred's Stores of Tennessee, Inc., Family Dollar Stores, Inc., Dollar General Corporation, Bruce Cagner, and Larry Roth's (collectively "BCNY") Motion to Compel Production of Documents and Better Answers to Interrogatories. [DE 483]. Plaintiff, Cobra International, Inc., ("Cobra") filed a Response [DE 491]. BCNY's Motion stated in the Certificate of Pre-Filing Conference that they had sent a letter and email to counsel for Cobra and that "Cobra stated it may be able to produce additional documents by the middle of this week." [DE 483, p.31]. However, BCNY asserted that they needed to file the motion to comply with the 30-day deadline pursuant to Southern District of Florida Local Rule 26.1(h)(1). [DE 483, p. 31]. In Cobra's Response [DE 491], it stated that "Defendants' counsel has filed the present motion to compel without a genuine effort to resolve discovery issues between the parties, and despite the attempt of Plaintiff's counsel to work with them." [DE 491, p. 1]. Cobra

also stated in its Response that a further meet and confer should be held among counsel to resolve the discovery issues in this case or at least to narrow the issues. [DE 491, p. 2].

In light of this, the Court found that BCNY did not comply with the meet and confer requirements established by Southern District of Florida Local Rule 7.1(a)(3). Accordingly, the Court ordered counsel for the parties to personally meet and confer, either in person or by telephone, in a good faith effort to resolve the pending discovery issues, within seven days [DE 492]. The Court further ordered that, once the meet and confer process was complete, the parties would file a joint statement advising the Court of which specific discovery requests, if any, remain unresolved [DE 492]. The parties filed their joint statement on September 20th, 2013 [DE 494], advising the Court on which discovery disputes they had managed to resolve. The parties also requested additional time to continue the meet and confer process [DE 494]. The Court granted this request, and ordered the parties to file a supplemental status report on or before Friday, October 4th, 2013 [DE 495]. The parties filed their supplemental status report [499], advising the Court that some matters remained in dispute. The parties requested a hearing on the unresolved discovery matters. On October 28th, 2013, the day before the scheduled hearing on BCNY's Motion, Cobra submitted a declaration from Cobra's President, Mr. Barry Eavzan [DE 504]. This declaration addressed the issues surrounding BCNY's outstanding requests for production. The undersigned held a hearing on these matters on October 29th, 2013, and they are now ripe for review.

This is a patent infringement case. During the October 29th, 2013 hearing, BCNY advised that the following discovery issues remained unresolved:

    1. Document request numbers 1, 2, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 23, 27, 29, 30, and 32, of BCNY's Fifth Request for Production; and

2

2. Interrogatory 1 of BCNY's Fourth Set of Interrogatories

BCNY grouped the discovery at issue into the following categories:

1. Document request numbers 1, 2, 8-19, 21, 23, and 30 pertain to the issue of Cobra's reasonable royalty damages;

2. Document request number 27 pertains to a license agreement between Cobra and a company called Smoky Mountain Boots, and document request number 29 pertains to a settlement agreement between Cobra and a company called Cancaribe Ltd.;

3. Document request number 32 pertains to a litigation funding agreement; and

4. In interrogatory number 1 of BCNY's Fourth Set of Interrogatories, BCNY asked Cobra to use a diagram provided by BCNY to pinpoint the aspects of BCNY's product which infringe on Cobra's patent.

At the beginning of the hearing, BCNY referred to the declaration filed by Mr. Eavzan the day before, and explained that it did not resolve the dispute and, in fact, only raised more questions about the discovery requests at issue. In particular, although the declaration stated that Cobra did not sell any shoes since the end of 2009, BCNY pointed out that it did not receive any documents to corroborate this assertion, and that the information contained in the declaration did not adequately address BCNY's inquiries regarding Cobra's reasonable royalty damages. BCNY explained that it received information regarding Cobra's shoe sales back in 2006, before the case was stayed,[1] and all that it requests is more up-to-date sales data. In response, counsel for Cobra stated that they conferred with their client, who represented that all items in his possession have already been produced. Counsel for Cobra explained that the roof on Mr. Eavzan's home in Massachusetts allegedly collapsed, and that many of Cobra's records were lost or destroyed.

---

1. The stay on this case was lifted on March 7th, 2011 [DE 309].

3

Counsel for Cobra explained that, after conducting a diligent search, Mr. Eavzan was "quite certain" that the sought-after documents were not in his possession.

The Court directs Mr. Eavzan to file a supplemental affidavit, specifying whether all efforts have been exhausted to obtain the documents sought by BCNY which are relevant to Cobra's reasonable royalty damages, and what efforts he has undertaken to obtain the updated sales data that BCNY seeks. Mr. Eavzan should indicate whether he attempted to obtain the updated sales information from Cobra's factor, and whether he conducted a full search of his Massachusetts home and any other locations where the records might be located. Mr. Eavzan should also indicate whether he tried to obtain this information from another third party and identify the third parties he contacted. Said affidavit shall be filed within 14 days of the date of this Order.

In response to request for production number 32, which pertains to the litigation funding agreement, Mr. Eavzan stated in his declaration that "Cobra continues to own the '858 patent. The person or entity funding Cobra's prosecution of the lawsuit against [BCNY] is not making the decisions for Cobra regarding the above-styled lawsuit, is not interfering with the independence and professional judgment of Cobra's counsel relating to the above-styled lawsuit, and is not receiving confidential communications between Cobra and its counsel relating to the above-styled lawsuit." [DE 504-1, ¶ 8]. During the October 29th hearing, BCNY argued that this portion of Mr. Eavzan's declaration is not sufficiently responsive to request for production number 32. BCNY explained that it wants to know whether ownership of the patent has transferred, and who has control over the decisions in the instant case. BCNY explained that it is seeking the documents that memorialize the funding agreement.

Cobra, on the other hand, maintains that ownership of the '858 patent and who is funding the instant litigation are not relevant issues in the case, and that turning over the litigation funding agreement would not lead to the discovery of relevant evidence. Cobra also believes that the litigation agreement is privileged material. When asked why BCNY would need the litigation funding agreement in light of the statements made by Mr. Eavzan in paragraph 8 of his declaration, BCNY explained that it should still have the opportunity to test Mr. Eavzan's averments, and that the ownership of the '858 patent is relevant to the issue of standing. In response, Cobra maintained that it has no other documents in its possession that are responsive to request for production 32.

This Court finds that the litigation funding agreement is relevant and is not privileged, and Cobra is ordered to produce it within 10 days from the date of this Order.

In response to request for production number 27, Cobra explained during the October 29th hearing that it has no documents relating to Smoky Mountain Boots and that anything previously in its possession has already been turned over to BCNY. The Court directs Mr. Eavzan to address in his supplemental affidavit why he has no records regarding the agreement between Cobra and Smoky Mountain Boots and further explain whether he has exhausted all efforts to obtain information relating to this transaction, and specify what these efforts entailed.

With respect to request for production number 29, BCNY explained during the October 29th hearing that the settlement agreement between Cobra and Cancaribe is relevant to the issue of reasonable royalty damages. Although Cobra argues that the Cancaribe settlement agreement is confidential, BCNY points out that there is a protective order in this case. Cobra further argues that, under *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983), the Cancaribe agreement is not relevant to the issue of reasonable royalty damages. In *Hanson*,

5

the court explained that certain proposed licensing agreements which were discussed after the alleged infringement had occurred and the threat of litigation arose should not be used to determine an established royalty for purposes of calculating reasonable royalty damages because "license fees negotiated in the face of a threat of high litigation costs may be strongly influenced by a desire to avoid full litigation." *Hanson*, 718 F.2d at 1079 (internal quotation marks and citation omitted). However, *Hanson* is factually distinguishable from the case at bar, because that case dealt with the admissibility of proposed licensing agreements for the purpose of calculating reasonable royalty damages. Pursuant to Rule 37 of the Federal Rules of Civil Procedure, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37. Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26. Pursuant to this rule, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *Positive Technologies, Inc. v. Sony Elecs., Inc.*, No. 11-cv-2226, 2013 WL 1209338, * 1 (N.D. Cal. Mar. 25, 2013) ("relevancy for the purposes of admissibility should not be conflated with relevancy for the purposes of discovery."). Here, although there is a question as to whether the Cancaribe agreement may be admissible at *trial*, under the more relaxed rules governing *discovery*, Cobra shall produce the Cancaribe agreement to BCNY because it is relevant to the issue of reasonable royalty damages. Said production shall occur within 10 days of the date of this Order.

With respect to interrogatory number 1 of BCNY's Fourth Set of Interrogatories, Cobra claims that it cannot provide better answers without first being provided with a better diagram. In response, BCNY maintains that it cannot provide a better or more complete diagram because

6

the one it has already given to Cobra fully depicts its device. Cobra is ordered to provide a more detailed response to interrogatory number 1 regarding Claim 1 #17, Claim 1 #20, Claim 1 #11, Claim 1 #12, and Claim 1 #14 [DE 483-8, pp. 16-17]. Cobra is directed to use its best efforts to fashion a response using BCNY's diagram within 21 days from the date of this Order.

**DONE AND ORDERED** in Chambers this 4th day of November, 2013, at West Palm Beach, Palm Beach County in the Southern District of Florida.

*William Matthewman*
WILLIAM MATTHEWMAN
United States Magistrate Judge