IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ART+COM INNOVATIONPOOL GMBH, <br><br> Plaintiff; <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Civil Action No. 14-217-RGA |

MEMORANDUM OPINION

Brian E. Farnan, Esq., Michael J. Farnan, Esq., Farnan LLP, Wilmington, DE; Scott F. Partridge, Esq., C. Ryan Pinckney, Esq., Larry G. Spears, Esq., Lisa C. Kelly, Esq., Lisa M. Thomas, Esq., M. Natalie Alfaro, Esq., Michael A. Hawes, Esq. (argued), Baker Botts LLP, Houston, TX, attorneys for Plaintiff ART+COM Innovationpool GmbH.

Jack B. Blumenfeld, Esq., Paul Saindon, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Darin W. Snyder, Esq. (argued), Luann L. Simmons, Esq., Mark Liang, Esq., Mishima Alam, Esq., John X. Zhu, Esq., David S. Almeling, Esq., O'Melveny & Myers LLP, San Francisco, CA, attorneys for Defendant Google Inc.

April ___, 2016

**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court is Defendant's motion for summary judgment for lack of patent-eligible subject matter. (D.I. 230). The issues have been fully briefed. (D.I. 231, 278, 310). Oral argument was held on March 24, 2016. (D.I. 336). For the reasons set forth herein, the motion for summary judgment is **DENIED**.

## I. BACKGROUND

ART+COM Innovationpool GmbH ("ACI") filed this patent infringement lawsuit against Google Inc. on February 20, 2014. (D.I. 1). ACI alleges that Google infringes U.S. Patent No. RE44,550 (the "'550 patent"). (*Id.*). On January 15, 2016, Google filed this summary judgment motion. (D.I. 230). Google argues that claim 1, the only independent claim, is directed to patent-ineligible subject matter.

The '550 patent describes a software-implemented method for providing a "pictorial representation of space-related data, particularly geographical data of flat or physical objects." '550 patent at 1:15-17; (D.I. 336 at 19). "The purported solution [to which the patent was directed] was two-fold: (1) to obtain data from spatially distributed data sources; and (2) to utilize a recursive process to request and display data with increasing resolution for a field of view." (D.I. 84 at p. 2).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a

dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carve outs is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical

formula to a known structure or process may well be deserving of patent protection." *Id.* at 1293-94 (internal quotation marks and emphasis omitted). In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 1294 (emphasis omitted).

The Supreme Court recently reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 2357. "[S]imply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable." *Mayo*, 132 S. Ct. at 1300. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 134 S. Ct. at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010)). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative.

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 2907 (2015).

"The ultimate question of patent eligibility under § 101 is an issue of law." *In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.*, 774 F.3d 755, 759 (Fed. Cir. 2014).

### III. DISCUSSION

Claim 1 of the '550 patent reads:

A method of providing a pictorial representation of space-related data of a selectable object, the representation corresponding to a view of the object by an observer with a selectable location and a selectable direction of view comprising:

>  (a) providing a plurality of spatially distributed data sources for storing space-related data;
>
>  (b) determining a field of view including an area of the object to be represented through a selection of a distance of the observer to the object and an angle of view of the observer to the object;
>
>  (c) requesting data for the field of view from at least one of the plurality of spatially distributed data sources;
>
>  (d) centrally storing the data for the field of view;
>
>  (e) representing the data for the field of view in a pictorial representation having one or more sections;
>
>  (f) using a computer, dividing each of the one or more sections having image resolutions below a desired image resolution into a plurality of smaller sections, requesting higher resolution space-related data for each of the smaller sections from at least one of the plurality of spatially distributed data sources, centrally storing the higher resolution space-related data, and representing the data for the field of view in the pictorial representation; and
>
>  (g) repeating step (f), dividing the sections into smaller sections, until every section has the desired image resolution or no higher image resolution data is available.

'550 patent at 10:16-44.

### A. *Mayo/Alice* Step One: Abstract Idea

"First, we determine whether the claims at issue are directed to [an abstract idea]." *Alice*, 134 S. Ct. at 2355. "The 'abstract ideas' category embodies 'the longstanding rule that an idea of itself is not patentable.'" *Id.* (internal quotation marks and alterations omitted) (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). In the wake of *Alice*, "precision has been elusive in defining an all-purpose boundary between the abstract and the concrete." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1345 (Fed. Cir. 2015). The Supreme Court has recognized, however, that "fundamental economic practice[s]," *Bilski*, 561 U.S. at 611, "method[s] of organizing human activity," *Alice*, 134 S. Ct. at 2356, and mathematical algorithms, *Benson*, 409 U.S. at 64, are abstract ideas.

Google argues that claim 1 is directed to the abstract idea of storing image data, then repeatedly requesting specific data, which is then stored and displayed. This subject matter is similar, Google argues, to that found ineligible in *Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*, 2015 WL 5093798 (D.D.C. Aug. 27, 2015), *appeal filed*, No. 15-7100 (D.C. Cir. Sept. 28, 2015). There, the court summarized one patent at issue as claiming the steps of:

> (1) displaying a map on a display screen and changing the portion of the map being displayed in response to user input, (2) displaying 'place indicators' on the map indicating the location of a place and the availability of associated text information and then displaying the associated input in response to user input . . ., and (3) providing 'text search' and 'text browse' features that allow a user to select a place and then display the portion of the map showing the location of that place . . . .

*Id.* at *7. The court, analogizing the claimed subject matter to atlases and encyclopedias, deemed these steps to be "variations on activities humans have performed for thousands of years using paper maps and other reference works." *Id.* The court therefore concluded that the claims were directed to an abstract idea. *Id.* Google contends that the steps of the '550 patent, like those in *Encyclopaedia Britannica*, "can be analogized to the age-old practice of a visitor in a

6

library reviewing atlases that include maps with differing resolutions or scales." (D.I. 231 at 12-13).

ACI argues that claim 1 is directed to the "use of different image resolutions in different sections and further division of those sections to achieve a pictorial representation from a selectable location and direction of view." (D.I. 278 at p. 1; D.I. 336 at 104). This idea, ACI contends, is not abstract. (D.I. 278 at p. 1; D.I. 336 at 104). ACI criticizes Google's analogy as flawed since a librarian would not permit a library guest to cut apart maps, and further argues that even Google's "over-simplified version [of the claims] does not equate to a fundamental or long prevalent method." (D.I. 278 at pp. 3-4).

When assessing the claimed subject matter, for purposes of § 101, a court should examine the "heart" of the claims. *Ultramercial*, 772 F.3d at 714; *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013); *see also Internet Patents*, 790 F.3d at 1348 ("basic character"). Although the Federal Circuit has declined to "state that all claims in all software-based patents will necessarily be directed to an abstract idea," it is relatively easy to conclude that the "ordered combination of steps [in the '550 patent] recites an abstraction." *Ultramercial*, 772 F.3d at 715. Like the steps of collecting, recognizing, and storing data that the Federal Circuit found abstract in *Content Extraction*, claim 1 recites an "undisputedly well-known" practice that "humans have always performed." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014), *cert. denied*, 136 S. Ct. 119 (2015); *see also, e.g., Cloud Satchel, LLC v. Amazon.com, Inc.*, 76 F. Supp. 3d 553, 562-63 (D. Del. 2014) (concluding that the claims at issue were drawn to the abstract idea of "cataloguing documents to facilitate their retrieval from storage"), *aff'd mem.*, 626 F. App'x 1010 (Fed. Cir. 2015), *cert. denied*, 2016 WL 1059941 (Apr. 25, 2016). Humans

have routinely stored—in libraries, for instance—maps, atlases, and photographs, which may contain image data with varying levels of specificity and detail. Upon requesting particular information from these sources, data is displayed to the person seeking that specific data.[1]

ACI urges the Court to examine how the patented invention operates. The particular technological implementation of an abstract idea, however, is relevant only to the second step of the *Alice* inquiry. *Ultramercial*, 772 F.3d at 715 ("We do not agree . . . that the addition of merely novel or non-routine components to the claimed idea necessarily turns an abstraction into something concrete. In any event, any novelty in implementation of the idea is a factor to be considered only in the second step of the *Alice* analysis."); *see also Bilski*, 561 U.S. at 610-11 ("The prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." (quotation marks omitted)). I conclude that claim 1 is directed to the abstract idea of storing image data, then repeatedly requesting specific data, which is then stored and displayed.

### B. *Mayo/Alice* Step Two: Inventive Concept

The determination that a patent is directed to an abstract idea "does not render the subject matter ineligible." *Internet Patents*, 790 F.3d at 1346. Having decided that the patent's claims are directed to an abstract idea, the Court must next "determine whether the claims do significantly more than simply describe the abstract method." *Ultramercial*, 772 F.3d at 715. Since "a known idea, or one that is routine and conventional, is not inventive in patent terms," this analysis "favors inquiries analogous to those undertaken for determination of patentable invention." *Internet Patents*, 790 F.3d at 1346. Neither "[a] simple instruction to apply an

---

[1] I do not think the library example, which the parties debate, is necessarily the best analogy in the non-computer realm. Since World War I, the armed forces have followed the practice of observing structures on the ground, taking pictures of them from various angles and distances, and storing the pictures for later retrieval and analysis.

8

abstract idea on a computer," nor "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer" satisfies the requirement of an "inventive concept." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015).

ACI contends there are inventive concepts expressed in steps (a), (c), and (f) of claim 1. (D.I. 336 at 94). These steps describe "spatially-distributed sources of data," "using the data to get a selectable viewpoint and extracting the data with regard to the selectable viewpoint," and "dividing and using different resolutions for different sections with further subdividing," respectively. (*Id.* at 94-95); *see also* '550 patent at 10:21-44. Google characterizes these steps as conventional. (D.I. 336 at 108-11). Specifically, Google compares spatially-distributed sources of data to records in county courthouses, and selectable viewpoints to a collection of photographs. (*Id.* at 109-10). Google also asserts that "using a computer to divide something up . . . is nothing new." (*Id.* at 111 (citing *Appistry, Inc. v. Amazon.com, Inc.*, 2015 WL 4210890, at *2, *4-5 (W. D. Wash. July 9, 2015), *appeal filed*, No. 15-2077 (Fed. Cir. Sept. 25, 2015))); *see also Alice*, 134 S. Ct. at 2358-59.

Step two of *Alice* presents a challenge. "At some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 134 S. Ct. at 2354 (internal quotation marks and alterations omitted). Patentability hinges on the search for "whether there is an inventive concept in a claim drawn to some level of abstraction." *Internet Patents*, 790 F.3d at 1348 (quotation marks omitted). While Samuel Morse was "allowed a patent for a process of using electromagnetism to produce distinguishable signs for telegraphy," he was denied a claim for "the use of 'electromagnetism, however developed for marking or printing intelligible characters, signs, or letters, at any distances.'" *Benson*, 409 U.S. at 68 (quoting *O'Reilly v. Morse*, 56 U.S. (15 How.) 62, 111-12 (1853)); *see also Mayo*, 132 S.

Ct. at 1301-02 (discussing *Morse* and *Benson* in relation to the "danger that the grant of patents that tie up their use will inhibit future innovation premised upon them, a danger that becomes acute when a patented process amounts to no more than an instruction to 'apply the natural law'").

The Federal Circuit, post-*Alice*, upheld a patent's § 101 eligibility in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014). In determining the existence of an inventive concept, *DDR Holdings* is instructive. "[T]o be considered sufficiently specific and meaningful applications of their underlying abstract ideas," and therefore permissible under § 101, claims must not be "recited too broadly and generically." *DDR Holdings*, 773 F.3d at 1256; *see also Internet Patents*, 790 F.3d at 1348-49. While the "specific way" the claims in *DDR Holdings* "automate[d] the creation of a composite web page" was relevant, it was so only because specific limitations demonstrated that the claimed invention did more than "recite a commonplace business method . . . , apply[] a known business process to the . . . Internet, or creat[e] or alter[] contractual relations using generic computer functions and conventional network operations." *DDR Holdings*, 773 F.3d at 1259. Specificity by itself does not bestow eligibility. *See Alice*, 134 S. Ct. at 2358-60; *Bilski*, 561 U.S. at 599-601.

Similarly, while the Federal Circuit concluded in *DDR Holdings* that the patent at issue was "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks," it also concluded "that not all claims purporting to address Internet-centric challenges are eligible for patent." *DDR Holdings*, 773 F.3d at 1257-58. Therefore, determining that a patent is necessarily tied to a computer- or Internet-centric problem does not resolve the question of patent eligibility. *See Alice*, 134 S. Ct. at 2358 ("limiting the use of an abstract idea to a particular technological environment" is insufficient to confer patent

eligibility (quotation marks omitted)); *Ultramercial*, 772 F.3d at 1264; *see also Diamond v. Diehr*, 450 U.S. 175, 191-93 (1981) (holding that "when a claim containing a mathematical formula implements or applies that formula in a structure or process which, when considered as a whole . . . .[,] is drawn to [the non-computer-centric] industrial process for the molding of rubber products," the claim is directed to patent-eligible subject matter). The "rooted in computer technology" heuristic of *DDR Holdings* is best understood as a clue that when a solution "overcome[s] a problem specifically arising in" a particular technological realm, that solution—though it may implement an abstract idea—may likely contain an inventive concept. *See DDR Holdings*, 773 F.3d at 1257-58.

The Supreme Court has described the second step of *Alice* as calling for the query: "What else is there in the claims before us?" *Alice*, 134 S. Ct. at 2355 (alteration omitted) (quoting *Mayo*, 132 S. Ct. at 1297). I conclude that, here, there is a satisfactory answer to that question. ACI has claimed more than the abstract idea of storing image data, then repeatedly requesting specific data, which is then stored and displayed. The '550 patent seeks to "enable [space-related] data to be represented in any pre-selected image resolution in the way in which the object would have been seen by an observer with a selectable location and selectable direction of view." '550 patent at 2:5-8. Further, the patent aims to "keep the effort required for generating an image so low that the image generation takes place so rapidly that upon alteration of the location and/or of the direction of view of the observer, the impression of continuous movement about the object arises." *Id.* at 2:9-13. These goals, the patent explains, are improvements over prior art systems like electronic maps stored on CD-ROMs, car navigation systems, or flight simulators. *Id.* at 1:30-41. "Due to the large quantities of data to be processed in the [prior art] systems, the generation of an image is either extremely costly in time, or is limited to the

11

representation of restricted information," and therefore, those prior art systems were incapable of "provid[ing] an image generation rate which is sufficient upon alteration of the location or of the direction of view . . . to provide the impression of continuous movement." *Id.* at 1:62-2:2. To these ends, the patent describes a process whereby distributed data sources supply requested data by repeatedly "dividing each of the one or more sections having image resolutions below a desired image resolution into a plurality of smaller sections, prior to requesting higher resolution space-related data for each of the smaller sections." (D.I. 148 at p. 17). As an ordered combination, this iterative process allows a user to access more electronic pictorial data in a more rapid fashion. The distributed data sources permit a user to access masses of data, while the recursive division step permits a user to access that data quickly, with increasing resolution over time. This amounts to "more than a drafting effort designed to monopolize the [abstract idea itself]." *Alice*, 134 S. Ct. at 2357.

Contrary to Google's assertions, the elements of computer functionality required by the '550 patent are not simply generic. There is not, for example, a bare recitation of "receiv[ing] and send[ing] . . . information over a network." *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014); *see also Appistry*, 2015 WL 4210890, at *4 ("dividing a task between two or more linked computers in order to complete the task more quickly and more efficiently" is a "basic" computer function). Nor does the patent merely claim the "improved speed or efficiency inherent with applying the abstract idea on a computer." *Intellectual Ventures*, 792 F.3d at 1367. The elements of the method described in the '550 patent are not merely what a computer does; they are a specific procedure that is done by a computer. While a "generic computer" does not "transform a patent-ineligible abstract idea into a patent-eligible invention," the use of any computer functionality does not, by itself, preclude the existence of an inventive concept. *Alice*,

134 S. Ct. at 2358-59; *see also DDR Holdings*, 773 F.3d at 1258-59. Claim 1 recites a specific way of overcoming a problem which plagued prior art systems. This specific solution, like that found in *DDR Holdings*, demonstrates a sufficient inventive concept.

Google raises numerous arguments about the extent to which the claimed invention is inventive. While the inventive concept analysis "is facilitated by considerations analogous to those of §§ 102 and 103," it is not a substitute for those statutory requirements. *See Internet Patents*, 790 F.3d at 1347. Aside from the excluded categories of laws of nature, natural phenomena, and abstract ideas, "Congress intended statutory subject matter to 'include anything under the sun that is made by man.'" *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (quoting S. Rep. No. 1979, at 5 (1952); H.R. Rep. No. 1923, at 6 (1952)). Having determined that the '550 patent claims more than a patent-ineligible abstract idea, I conclude that it satisfies the threshold of § 101.

## IV. CONCLUSION

For the reasons set forth above, the motion for summary judgment is **DENIED**. An appropriate order will be entered.

13