```
 1              UNITED STATES DISTRICT COURT

 2             FOR THE DISTRICT OF DELAWARE

 3

 4    ART+COM INNOVATIONPOOL GmBH  :   CA NO. 14-217-TBD

 5                                 :

 6              Plaintiff,         :   May 2, 2016

 7                                 :

 8    v.                           :   2:00 O'clock p.m.

 9                                 :

10    GOOGLE INC.                  :

11                                 :

12              Defendant,         :

13    .............................:

14

15

16              TRANSCRIPT OF STATUS CONFERENCE

17         BEFORE THE HONORABLE RICHARD G. ANDREWS

18              UNITED STATES DISTRICT JUDGE

19

20

21    APPEARANCES:

22

23    For Plaintiff:     FARNAN LLP

24                       BY:  BRIAN E. FARNAN, ESQ

25                              -and-
```

```
 1                        BAKER BOTTS LLP

 2                        BY:  SCOTT F. PARTRIDGE, ESQ

 3                        BY:  LARRY G. SPEARS, ESQ

 4                        BY:  M. NATALIE ALFARO, ESQ

 5

 6

 7   For Defendant:       MORRIS, NICHOLS, ARSHT & TUNNELL

 8                        BY:  PAUL SAINDON, ESQ

 9                               -and-

10                        O'MELVENY & MYERS LLP

11                        BY:  DARIN W. SNYDER, ESQ

12                        BY:  DAVID S. ALMELING, ESQ

13

14

15

16

17

18

19

20

21

22

23   Court Reporter:      LEONARD A. DIBBS

24                        Official Court Reporter

25
```

```
 1                      P R O C E E D I N G S

 2

 3             THE COURT:  Good afternoon.

 4             (All counsel responded, "Good afternoon, your Honor.)

 5             THE COURT:  For the records this is a status conference

 6      in Art+Com Innovationpool versus Google, District of Delaware,

 7      14-217.

 8             And I've been designated to sit as the trial judge in

 9      this case.  And with me is my law clerk, David Yen.

10             This is being recorded by equipment from the Court of

11      Federal Claims and eventually will be forwarded to Mr. Dibbs,

12      Judge Andrews' Court Reporter, and he will transcribe it.

13             Why don't we begin by asking counsel to identify

14      themselves for the record.

15             MS. FARNAN:  Good afternoon, your Honor.  Brian Farnan

16      on behalf of the plaintiff.  And with me is Scott Partridge from

17      Baker Botts.

18             MR. PARTRIDGE:  Good afternoon, your Honor.  This is

19      Scott Partridge.  I also have Gene Spears and Natalie Alfaro

20      with me as well.

21             MR. SAINDON:  Good afternoon, your Honor.  Is Paul

22      Saindon behalf of Google.

23             With me Darin Snyder and David Almeling from O'Melveny

24      & Myers.

25
```

1          MR. SNYDER:  Good afternoon, your Honor.

2          That was all.

3          THE COURT:  That was you will.  This is Darin Snyder.

4    I've already been introduced.

5          THE COURT:  Good.

6          I just ask to avoid confusion here that there be one

7    Delaware counsel and one other counsel speaking for each side in

8    our status conference call.  And if you could identify who that

9    is going to be each time you say something, I think you need to

10   proceed it by saying your name so that the court reporter can

11   record it accurately.

12         Who's going to speak for ART+PLUS?

13         MS. FARNAN:  Your honor, Delaware counsel, Brian

14   Farnan.

15         MR. PARTRIDGE:  Other counsel is Scott Partridge.

16         THE COURT:  Okay.  And for Google?

17         MR. SAINDON:  Delaware counsel, Paul Saindon.

18         THE COURT:  Yes.

19         MR. SNYDER:  The other counsel will be Darin Synder.

20         THE COURT:  Okay.

21         I think the first order of business here is to see if

22   it is possible to have the Pretrial Conference on May 13th, here

23   in Washington.

24         Is there any objection to doing that?

25         MR. PARTRIDGE:  Plaintiff is fine with that.

1        MR. SNYDER:  Google is also fine with that.

2        THE COURT:  To make it as convenient as possible, let

3    me ask.  What would be a good time to start the Pretrial

4    Conference, would it be good for you or the people that are

5    coming in from out of town to prefer to have it later?

6        MR. PARTRIDGE:  Your Honor, we'll be coming in from out

7    of town.

8        But I think we'll need to come in the night before no

9    matter what time you start the hearing.  10 o'clock in the

10   morning is fine for us.

11       MR. SNYDER:  Counsel for Google is in a similar

12   situation.  A 10 o'clock start time sounds fine.

13       THE COURT:  Good.

14       It will be in courtroom 203 at the Federal Circuit.

15       Now, I gave you the agenda with a number of different

16   items on it.

17       I don't necessarily want to make conclusive rulings

18   about this today.  But I thought it would be useful to review

19   some of the items so that in preparing your draft Pretrial

20   Order, you can take account of what my preferences are.

21       So, in terms of the hours of trial time, obviously,

22   this case is scheduled to be completed during a single week.

23   And it will be important to give the jury time to deliberate so

24   that they can be finished, if possible, before the Memorial Day

25   weekend.

1     How many hours of trial time does each side anticipate

2     needing, that is exclusive of opening and closing arguments?

3          MR. PARTRIDGE:  Your Honor, I know the schedule for

4     this trial is a little bit different than the norm.  That

5     occurred because of a compromise that the parties entered into

6     to accommodate a conflict that Mr. Snyder had with a trial

7     originally scheduled to start on May 16th.  And the idea was to

8     do the evidence from Monday through Thursday.  I think that's

9     the 23rd through the 26th, if I got my calendar dates correctly.

10         And Judge Andrews normally has about 6 hours worth of

11    time each day with the jury.

12         So our calculation has always been that it would be 12

13    hours per side including the opening, but excluding the

14    closings, which are scheduled to take place on that following

15    Friday morning.

16         So, we would suggest 12 hours per side including a 30

17    minute opening for each side.

18         THE COURT:  And what about defendant?

19         Hold on a one second.  What's the proposal with respect

20    to the closing argument?

21         MR. PARTRIDGE:  Your Honor, we want to do the closings

22    to make sure they're done in the morning so the jury can start

23    deliberating first thing in the afternoon.

24         In fact, if we can limit the closings to maybe an hour,

25    to an hour-and-a-half so that we can finish, I think ideally it

1    would be nice to finish closings in the morning, to have the

2    instructions prior to the closings, which Judge Andrews has told

3    us he was going to do.

4            Whether we could do that Thursday afternoon at the end

5    of the trial day and do the instructions first thing in the

6    morning, but I think our objective ought to be to finish

7    everything so the jury has the case by noon on that Friday so

8    they can being the deliberating process.

9            So, we're fine with maybe setting that amount of time

10   during the course of trial, but we're thinking it's more like an

11   hour, maybe an hour and 15 minutes.  I don't know that it needs

12   to go as long as an hour and 30 minutes, but something like an

13   hour and 15 minutes should probably be sufficient for this case.

14           THE COURT:  Okay.  The other side?

15           MR. SNYDER:  Thank you, your Honor.

16           When we set the trial to start on May 23rd, Judge

17   Andrews had a family obligation and conflict on Friday that we

18   were working around.

19           Now that your Honor is going to preside over trial, we

20   maybe free of that limitation.  And it maybe prudent to extend

21   the case a little bit longer than perhaps Judge Andrews had

22   contemplated.

23           We think 15 hours per side exclusive of openings and

24   closings would be an appropriate amount of time.  There are a

25   significant number of issues on both infringement and validity.

1       We're largely in agreement with plaintiffs on the
2   length of the openings and closings.  30 minutes should
3   sufficient be for the opening.  I think 60 minutes or perhaps
4   just a little bit more than that should be adequate for
5   closings.
6       I like to get some guidance on how the plaintiff might
7   be allowed to use their time on rebuttal.  I think the
8   difference right now is the amount of time for the witnesses.
9   We request 15 hours per side.
10      THE COURT:  Okay.  Well, my inclination now is to go 12
11  hours including a 30 minutes for openings and an hour for the
12  closings.
13      If, when, we have the Pretrial Conference, you want to
14  ask me to reconsider that, I would be open to addressing it
15  again.  But for the moment, let's go with 12 hours including a
16  30 minute opening and then a separate one hour per side for the
17  closing.  So that we can get it to the jury by noon time on that
18  Friday.
19      MR. SNYDER:  Does your Honor have rules regarding the
20  amount of time that can be used for rebuttal?
21      As a defendant, we're always paranoid about the
22  plaintiff giving up a two minute initial closing and then
23  reserving all of their time for rebuttal when we don't get to
24  respond to it.
25      THE COURT:  I'm not inclined to have a rebuttal.  But

1    at the same time, I am not going to permit sandbagging.  So

2    there's a huge amount of time reserved for the plaintiff.  We

3    can address that at the Pretrial Conference if there are

4    concerns about it.

5         MR. SNYDER:  Thank you, your Honor.

6         THE COURT:  Now, where are you on the jury

7    questionnaire?  Are you going to ask for one?

8         MR. PARTRIDGE:  No, we are not asking for one.  And I

9    have not heard that Google is asking for one either.

10         I thought the answer to this question on your agenda

11   was going to be no.  I'd be interested, obviously, in hearing

12   from getting Google.  We've heard nothing about a jury

13   questionnaire up until now.  Of course, we have voir dire

14   questions that are on May 11th to the Court.

15        MR. SNYDER:  Your honor, we would like to ask a simple

16   questionnaire.  We think that it could make voir dire process

17   more efficient.  We can provide a draft of that promptly.

18        THE COURT:  Well, what I'd suggest is that both sides

19   sit down and go over the draft.

20         As with judge Judge Andrews, I would want questions to

21   ask of the potential jurors what connections they had with the

22   case.  That will happen at the voir dire.

23         I wouldn't want any of the questions to be intrusive

24   either.  With that guidance, you can come up with a proposed

25   questionnaire.  I'd suggest that you submit that, let's see, by

1    the end of week -- by the end of this week.

2        MR. PARTRIDGE:  Your Honor, we're happy to engage in

3    that discussion with Google.  But this comes as a bit of

4    surprise to us that they now want a questionnaire.

5        And I will say that my initial reaction is to raise the

6    question of a questionnaire this short a time prior to trial is

7    something we're probably going to object to, but I'm happy to

8    look at what they had in mind and respond to it and then address

9    it at the Pretrial Conference.

10        THE COURT:  All right.  Why don't we schedule that as

11    an item for the Pretrial Conference.

12        If there is going to be a proposed draft or agreed

13    draft of a jury questionnaire, I want to see that together with

14    the proposed Pretrial Order.

15        MR. SNYDER:  We will provide ACI's counsel with a draft

16    quickly in the hopes of reaching as much resolution as possible

17    and submitting it your Honor at end of the week.

18        MS. FARNAN:  This may create a logical issue.

19        Typically, when a party wants a jury questionnaire,

20    they submit it far in advance so the Clerk's Office wants to be

21    submitted, sends it out to the jury with the Court's own

22    questionnaire that the parties get two days before trial where

23    the jurors -- have the jurors answer standard questions.  I

24    think that time may have passed.  It may be a issue in the

25    Clerk's Office.  It may not be.  I just want to raise that issue

1       for your Honor.

2               To raise that, for your Honor.

3               THE COURT:  I will take that into consideration as to

4       whether there will be a jury questionnaire.

5               One solution to that would be to have the potential

6       jurors fill out the questionnaire on the day of the voir dire.

7               MR. FARNAN:  Yes, that should possible, your Honor.

8               THE COURT:  As I say, get me the draft by this Friday

9       with any objections that exist to it so I can consider it.

10              All right.  I do intend to allow the jury to ask

11      questions using the procedure that I adopted in the earlier

12      Delaware case that I sat on and the Stragent case that I sat on

13      in Texas.

14              Those two cases are the Immersion Corporation versus

15      HTC case, which in Delaware is 12-CV-259.

16              The Stragent versus Intel, which was ED Texas, case

17      number 11-CV-421 four 21.

18              Does either side object to my allowing the jury to ask

19      questions?

20              MR. PARTRIDGE:  We have no objection to that.  We'll be

21      interested in looking at those procedures that you put in place.

22              MR. SNYDER:  No objection.

23              THE COURT:  Okay.  Good.

24              And then with respect to jury notebooks.

25              Again, if you look at those cases, they describe what

1    should be in the jury notebooks.  So I think that when you come

2    up with the proposed Pretrial Order, you should come up with a

3    proposed draft of the jury notebooks also.

4         MR. PARTRIDGE:  That is included as one of the items in

5    the draft Pretrial Order that we've been exchanging, which are

6    due at the end of the week.

7         Are you suggesting, your Honor, that the two cases you

8    identified in the Stragent and the Immersion case, that there is

9    an Order regarding jury notebooks that might be of use to us?

10        THE COURT:  Yes.

11        MR. PARTRIDGE:  Yes, okay.  We'll look at those as

12   well.  I'm not familiar with those.

13        THE COURT:  All right.  Moving on to the question of

14   claim construction, disputes now that Judge Andrews has decided

15   on Summary Judgment Motions.  It is likely that we will face

16   anymore claim constructions disputes before trial?

17        MR. PARTRIDGE:  Your Honor, we are not aware of any

18   claim construction disputes that you need to address.

19        MR. SNYDER:  We're not aware of any claim construction

20   disputes to be addressed either.

21        If I could flip back momentarily to the previous agenda

22   today on jury notebooks?  There's one issue that we will ask the

23   Court to decide about the content of those notebooks, unless we

24   get guidance from you today, and, that, whether we can include

25   the principle pieces of prior art on which we rely for our

1    invalidity argument?

2            MR. PARTRIDGE:  That is a dispute between the parties.

3            But I think it's best for us to both look at the Orders

4    you've entered in those other cases and take into account and

5    the Pretrial Order that we're going to be submitting to the

6    Court on May 6th, this Friday.  Excuse me, May 9th.

7            THE COURT:  The notebooks that had in the other two

8    cases did not include the prior art, which presumably will be

9    made into exhibits in the case, correct?

10           I think I'm not inclined to include the prior art in

11   the jury notebooks, but again, you can ask me to consider that

12   at the pretrial.

13           MR. SNYDER:  Thank you, your Honor.

14           THE COURT:  We'll have it on the agenda for pretrial

15   conference.

16           The next item is possible tech-tutorial.  Is that

17   something the parties would think would be useful?

18           MR. PARTRIDGE:  I have a suggestion for you that might

19   be helpful to bring you up to speed a bit on the technology.

20           We did not do a technology tutorial for Judge Andrews

21   for the Markman Hearing or at any other time.  So there isn't

22   anything you might say in the can that we can use.

23           However, the technical experts for both sides wrote in

24   the background section of their respective reports, summaries of

25   the technology that is at issue here.  And frankly, I think both

1    experts did a pretty good job of providing an explanation of the

2    basic technology.

3         What I would suggest as a starting point for your

4    Honor, might be that the parties provide you with not obviously

5    the whole expert reports, they are too long, but just those

6    portions that describe the technology background.  And then once

7    you have a chance to look at those, if you think you require

8    more, or want to have a dialogue perhaps at the Pretrial

9    Conference about the technology, we can certainly accommodate

10   your needs at that point.

11        THE COURT:  What is Google's position about that?

12        MR. SNYDER:  This is the first time first I heard of

13   that proposal.  I haven't looked at those summary sections with

14   this purpose in mind.

15        We'd be happy to provide a particular tutorial for the

16   Court if you think it would be helpful.  The lawyers would be

17   prepared to do that at the time of the Pretrial Conference.

18        I can quickly go back and look at those summaries and

19   see if we agree they would be appropriate and perhaps let your

20   clerk no later than today or early tomorrow if we think that

21   would be appropriate.

22        THE COURT:  Why don't you do that.  Let him know by

23   noon tomorrow, let's say, and assuming they would be useful, why

24   don't you got together and send them to me as a package here in

25   the Federal Circuit?

1               The next item that I had was the Charge Conference.

2               As you'll see from the previous cases, I do want either

3      the preliminary jury instruction or the final jury instructions

4      to be filled with boilerplate, which potentially would confuse

5      the jury as to what the issues are.

6               If you take a look at the Charge Conferences that I

7      adopted in those two cases, I think that will give you guidance

8      to come up with proposals for the Pretrial Order and for your

9      later drafts of the charge.

10              MR. PARTRIDGE:  May I ask you a question about that?

11              THE COURT:  Yes.

12              MR. PARTRIDGE:  We're in the process of exchanging

13     instructions.

14              We've provided our proposed instructions to Google, and

15     we're waiting to get their response in next number of days.  I

16     don't recall exactly when their due to us.

17              One of the things we did is, we tried to track where

18     relevant the Federal Circuit Bar Associations latest version of

19     jury instructions.

20              Do you find those to be too boilerplate?  I'm trying to

21     get some sense of what you mean by boilerplate.

22              Obviously, one can look at those instructions in the

23     other cases and tell, but it would be helpful to know if you

24     consider those too boilerplate.

25              THE COURT:  I haven't reviewed them to comment enough.

1          I think if you look at the preliminary instructions in

2     the two prior cases and the final instructions in the Stragent

3     case, that will give you some guidance as to what I'm thinking

4     about.

5          I want to direct the instructions to the actual case

6     that is before the jury rather than give them instructions which

7     don't bear any necessary relationship as to what's going on.

8          For example, if there is an issue of invalidity, if

9     there is anticipation, I want to point them to the anticipatory

10    references, obviously.  I also want to point them to the

11    disputes between parties as to what they should be focusing on

12    as to what the anticipatory references do or do not show.

13         MR. PARTRIDGE:  I understand.  We haven't go to that

14    extent in the draft that we've provided thus far.

15         We will work on that with Google and get you a set

16    that's more akin to what your desires are here.

17         You had asked about having a Charge Conference.

18         I with we that you which we thought was a good idea,

19    which we thought was a good idea.

20         We're picking a jury on Thursday, May the 19th, so we

21    thought if you wanted to have an informal Charge Conference in

22    advance of trial, which again, we think makes sense, we might be

23    able to do it that day or the next day.

24         I understand you'll still be in Delaware in connection

25    with the Bench Bar Conference.  So, whatever is convenient for

1    your Honor in terms of having that informal Charge Conference,

2    we'll make work.

3             THE COURT:  I think we can have an informal Charge

4    Conference after the jury selection.  I don't think that will be

5    a substitute for a informal Charge Conference that takes place

6    after the evidence is that's in in the trial and everyone knows

7    what the issues are.

8             I'm contemplating having a informal Charge Conference

9    at the close of all the evidence and then to have a formal on

10   the record Charge Conference later.

11            So that way we can try to work out as much at informal

12   Charge Conference as possible.

13            MR. PARTRIDGE:  Okay.  Understood.

14            THE COURT:  And the last item here was the timing of

15   the bench trial on Inequitable Conduct and Laches.

16            Have you given that some thought?

17            MR. PARTRIDGE:  At the moment we don't know who Google

18   expects to call in connection with those defenses.  Our

19   witnesses will be in Delaware, obviously, during the week of the

20   jury trial from Germany with the exception of experts.  So

21   they'll be available.

22            One thing we might consider is the possibility of doing

23   this bench trial while the jury is out deliberating.  I know,

24   your Honor, from your experience in the Eastern District of

25   Texas, that that is a common way to manage that to minimize the

1    inconvenience to witnesses.  And that might be a way to do it

2    here.

3              But frankly, at this point, we don't know who Google

4    would expect to call for the purposes of those two defenses.

5              I'm sure everybody knows that today the Supreme Court

6    took the SCA Hygiene case.

7              Obviously, at some point we're going to be seeing a

8    ruling on that.  In the interim, we probably need to complete a

9    trial and get a judgment in this case so we can move forward.

10             THE COURT:  So, what's Google position as to the bench

11   trial on the Inequitable Conduct and Laches issue?

12             MR. SNYDER:  I anticipate that there will be complete

13   overlap, or nearly complete overlap in the witnesses that

14   testify in the laches/Inequitable Conduct aspect of the trial as

15   will testify in the first portion of the trial.

16             That raises a couple of possibilities.  One, is that

17   while witnesses are on the stand, we could take outside the

18   presence of the jury any additional testimony related to

19   Inequitable Conduct or Laches.  That, of course, might affect

20   our ability to finish on the originally contemplated timeline.

21             THE COURT:  I don't want to do that.  You can put that

22   aside.

23             MR. SNYDER:  Another possibility is to do it while the

24   jury is deliberating.  Google doesn't object to that.  Or if

25   it's necessary after the jury comes back, do it immediately

1    thereafter.

2         I am sensitive, we are sensitive to the fact that ACI's

3    witnesses are traveling internationally.

4         THE COURT:  I'm going to be sensitive in that respect,

5    too.  My preference would be to do it while the jury is

6    deliberating.  I would like to have in the draft Pretrial Order

7    some agreement or estimates as to how much trial time would be

8    required for those witnesses if we were to do that immediately

9    after the jury went to deliberate.

10         MR. PARTRIDGE:  That makes sense to ACI, your Honor.

11         MR. SNYDER:  We understand, your Honor.

12         THE COURT:  I think those are the only items that I

13    that I wanted to discuss.

14         Are there other things that counsel would like to bring

15    up?

16         MR. PARTRIDGE:  Nothing from us, your Honor.  Thank

17    you.

18         MR. SNYDER:  A couple of other issues.

19         Many of these are clarifying the procedure that you

20    intend to follow.

21         As Mr. Partridge mentioned, we are scheduled for jury

22    selection on May 19th given that you will be traveling from

23    D.C., we did want to make sure that you intended to proceed with

24    jury selection on that date?

25         THE COURT:  Yes, at 1:00 o'clock on the 19th.

1          MR. SNYDER:  Thank you.

2          The next issue that I'd like to raise relates to the

3     order and scope of proof.  It's Judge Andrews practice that, of

4     course, the plaintiff is first, the defendant then puts on its

5     evidence related to non-infringement and invalidity and the

6     plaintiff then provides a rebuttal that is limited to the issues

7     of invalidity.  Defendant then does not get a sur-reply on the

8     issue of validity.

9          I wonder whether your Honor can give us any guidance as

10    to whether that is the procedure you follow or prefer a

11    different approach to the evidence?

12         THE COURT:  Again, this is something that can be

13    brought up at the Pretrial Conference.  I think I am open to the

14    notion that the defendant would have a short sur-rebuttal on the

15    invalidity issues.

16         MR. PARTRIDGE:  We're happy to discuss this at the

17    Pretrial Conference as to the scope of our rebuttal as well as

18    any sur-rebuttal.

19         Frankly, I haven't' though much about that at this

20    point.  It was something we had intended to discuss with Judge

21    Andrews at the Pretrial Conference.

22         Your views maybe a little different than his.  I think

23    it would be appropriate for us to have a conversation about that

24    at that time, and I will put that on the agenda.

25         THE COURT:  Good.

1          Is there anything else that we need to discuss?

2          MR. SNYDER:  Yes, a couple more issues, your Honor.

3          I raise them now in part because they may involve

4     taking some actions before the Pretrial Conference.

5          Many of ACI's witnesses are native German speakers.

6          ACI has recently indicated that they intend for those

7     witnesses to testify at trial in English, which is something we

8     object to.  If they are going to testify at trial in English, we

9     strongly believe we should have an opportunity to depose them in

10    English before trial.

11         We sent a message very recently over the weekend to

12    ACI's counsel on the issue, but had not heard back from them.

13    If there are going to be a depositions taken, obviously, we need

14    to take advantage of the limited time we have before trial to do

15    that.

16         MR. PARTRIDGE:  I have never heard of such a thing.

17         And I've recommended and been involved in cases with

18    witnesses from Japan, China, Korea, Germany, Italy, France.

19    I've never heard of such a thing as this.

20         We have probably three German witnesses who will

21    testify.  It will probably be only three.  One, I'm not sure is

22    going to be able to testify in English.  He's very uncomfortable

23    with English.  He may have to testify in German.  The other two

24    have English as a second language.

25         This is hard for the jury to follow translated

1    testimony.  They both are willing to testify in English.  It

2    will require us to ask perhaps little shorter questions of the

3    witnesses so that it's more readily understood.  But I think

4    they can.  We handle this in both direct and cross in English as

5    long as we have an interpreter available to them in the event

6    that their words that they just simply can't get or an answer

7    that they would like to give in German.

8         And frankly, this could happen on direct.  It could

9    happen on cross.  I think with respect to the two witnesses who

10   are willing to try to testify in English, I think one will be --

11   will do well, I think.  The other one.  It will certainly be a

12   little harder for him, but it will certainly be a lot easier for

13   the jury to get this if we do this in English.

14        I had this done against me where I've had witnesses

15   that I've examined who testified in depositions in Korean or

16   Japanese and testified in English at trial, go all be it, they

17   struggled.  But I never heard of what counsel is suggesting

18   here.

19        I think we should be looking toward what is going to be

20   the most convenient for the jury to understand the case.  And if

21   the witnesses are able to go in English, we should certainly

22   accommodate that.  And I appreciate that if there is a problem

23   on cross with them understanding and we have to do more

24   interpretation, which I don't expect to be the case, then your

25   Honor would be free to make some adjustment in trial time as a

1    consequence of that if that problem arises.  I don't think it's

2    going to be an issue here.

3            THE COURT:  The three witnesses were deposed in German?

4            MR. PARTRIDGE:  Yes, your Honor.

5            THE COURT:  Was there any objection to their testifying

6    in depositions in German as opposed to English?

7            MR. PARTRIDGE:  No, your Honor.

8            THE COURT:  I'm not going to allow more depositions on

9    that theory.

10           MR. SNYDER:  If they were testifying at trial in German

11   as they did om their deposition, there would be no prejudice.

12   We would certainly understand that.

13           The prejudice comes from precisely the situation that

14   plaintiff's counsel just described.

15           Having put us through the burden of deposing them

16   through an interpreter during their depositions and even going

17   so far as to objecting to the use of those videotape

18   transcripts, because of the problems associated with having

19   interpreted depositions, they now want to make the tactical

20   decision of coming to trial and testifying in English to the

21   extent that they can.

22           I'm sure we can all predict how much easier it will be

23   for them on direct after they had a chance to confer with

24   counsel and discuss their testimony as you would expect any

25   witness to do with their lawyers, but not have that same

1   opportunity that comes to cross-examination.

2          This isn't just an issue of adjusting the amount of

3   time, this is about the effectiveness of our ability to

4   cross-examine them, and the prejudice of having them testify on

5   direct in English, which, of course, the jury will understand

6   better.  And then essentially forcing the cross-examination

7   likely to occur in a foreign language, which the jury will not

8   understand as well.

9          THE COURT:  As far as taking additional depositions,

10  I'm not going to allow it.  If you want to argue at the time

11  that the deposition should have been in English, you had to

12  raise it then and not now.

13         As far as how to handle a situation where a witness is

14  able to testify in English only on direct and not on cross,

15  we'll address that when the time comes.

16         Anything else we need to address?

17         MR. SNYDER:  The last issue, your Honor, relates to

18  Orders that came out last week.

19         As your Honor maybe aware, Judge Andrews ruled on

20  several pending motions, including a Motion to Exclude the

21  Plaintiffs Damages Expert.

22         That motion by Google was granted in part and denied in

23  part.  And we plan to file a short -- or are at least

24  contemplating a short motion to reargue the denied portion of

25  that, because we think there some important factual

1    misunderstandings.  I want to bring those to the Court's

2    attention.

3          If your Honor agrees, I think it would be prudent to

4    set a briefing schedule for that in the hopes that both an

5    opening and opposition brief could be filed before the Pretrial

6    Conference next Friday.  And we will be prepared to get that

7    motion on file within the next couple of days to accommodate

8    that schedule.

9          THE COURT:  To be clear, I'm treating all of Judge

10   Andrews' rulings as the law of the case.

11         And that doesn't mean that I might not depart from some

12   of them.  But there's going to be a very heavy burden to

13   establish that I should change the ruling.

14         If you want to brief this question, -- was it a Daubert

15   ruling that Judge Andrews made?

16         MR. SNYDER:  Yes, your Honor.

17         THE COURT:  You can get together with opposing counsel

18   and propose a schedule for the briefing of that and then send

19   that proposal to my clerk, and I'll approve it or disapprove it.

20         MR. SNYDER:  We will do that.

21         Thank you, your Honor.

22         THE COURT:  Anything else?

23         MR. PARTRIDGE:  Nothing from the plaintiff.

24         MR. SNYDER:  Nothing further.  Your Honor.

25         THE COURT:  Okay.  Thank you all.

1          Thank you for willing to come to Washington for the

2     Pretrial Conference.

3          We'll have a Minute Order of the Status Conference

4     posted tomorrow.  And you can talk to Mr. Dibbs as to when the

5     transcript will be available.

6          MR. PARTRIDGE:  Thank, your Honor.

7          MR. SNYDER:  Thank you.

8          THE COURT:  Thank you.

9          (The Status Conference concluded at this time.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25